406 So.2d 347 (1981)
Mayer MITCHELL, et al.
v.
Ethel V. MOORE and Winn-Dixie Stores, et al.
79-517.
Supreme Court of Alabama.
September 18, 1981.
Rehearing Denied November 6, 1981.
*349 James J. Duffy, Jr., Carroll H. Sullivan, and Edward C. Greene of Inge, Twitty, Duffy & Prince, Mobile, for appellants.
Norman E. Waldrop, Jr. and A. Danner Frazer, Jr. of Armbrecht, Jackson, DeMouy, Crowe, Holmes & Reeves, Mobile, for appellee Ethel V. Moore.
Daniel A. Pike of Sintz, Pike, Campbell & Duke, Mobile, for appellee Winn-Dixie Louisiana, Inc.
EMBRY, Justice.
This is what is commonly known as a slip and fall case. Mrs. Ethel V. Moore's action for damages on account of personal injuries for negligence and wanton misconduct was submitted to the jury against Winn-Dixie Louisiana, Inc.; Mayer Mitchell, Abraham Mitchell, and W. A. Lubell, partners doing business under the name and style of M & L Realty; and the Mitchell Corporation. Winn-Dixie's cross-claim against M & L was not, irregularly but not erroneously or improperly, submitted to the jury but, rather on post trial motion, judgment was entered upon it in favor of Winn-Dixie following a verdict in favor of Mrs. Moore against both those defendants in the amount of $75,000.
A fair summary of the facts shown in the record discloses that on 1 March 1978 Mrs. Moore tripped and fell at a jagged crack between the ramp and sidewalk as she was leaving a Winn-Dixie store located in a *350 shopping center in Mobile, Alabama. The building was occupied, and a grocery business conducted therein, by Winn-Dixie under a lease with an entity to which we will simply refer as M & L. In that lease there was an indemnity clause whereby Winn-Dixie would be indemnified for any loss suffered by it because of defects in the condition of the premises.
Mrs. Moore's injuries occurred in the vicinity of an asphalt ramp provided so that shopping carts might be pushed from the concrete sidewalk immediately adjacent to the store into the shopping center's parking lot provided for use of the customers of all tenants of that shopping center.
There is evidence that at least one other person, previous to Mrs. Moore's fall, tripped and fell at the crack at the same site. As to this fact, defendants stipulated they had notice. In the interval between the earlier fall and Mrs. Moore's fall the landlord took no measures to repair or remedy the crack.
Regarding her damages, among other items, there is evidence that Mrs. Moore sustained a fractured left hip requiring surgery and has a permanent five to seven percent impairment of her left leg. A reasonably accurate statement of appellants' contended errors is:
(1) Whether the trial court erred by permitting the witness Inez Sykes to testify;
(2) Whether there was error in the refusal to grant a requested continuance due to the absence of a subpoenaed witness;
(3) Whether evidence of medicare payments is admissible because they are not a collateral source;
(4) Whether the trial court erroneously charged the jury regarding the duty of care owed a business invitee by a landlord;
(5) Whether the verdict was contrary to the great weight of the evidence;
(6) Whether the damages were excessive, and
(7) Whether judgment was improperly entered in behalf of Winn-Dixie on its cross-claim?
Each issue will be treated in the order presented.
Appellants, the M & L group, first contend the trial court erroneously permitted plaintiff's witness Inez Sykes to testify. They argue that her testimony was in blatant violation of the requirement of Rule 26(e)(1) & (2), ARCP, that a party supplement or amend answers to interrogatories as further information becomes available. The record shows that plaintiff failed to identify Ms. Sykes in response to defendants' interrogatories requesting the identity of witnesses to be offered by the plaintiff at trial. The record, however, further shows that plaintiff originally learned of her identity through answers to interrogatories propounded to defendants. Plaintiff's attorneys questioned her for the first time on Saturday, January 5, 1980, two days before trial. It was not until that time that the decision was made to call Ms. Sykes as a witness. It is true, if justified by the circumstances, a judge may properly require a party to disclose the names of all persons he intends to call as witnesses at trial, but a discovering party does not have the right to demand from an adverse party a list of all witnesses to be called at trial. Ex parte Dorsey Trailers, Inc., 397 So.2d 98 (Ala. 1981). The trial court concluded that under the circumstances, plaintiff had not knowingly concealed the identity of Ms. Sykes in violation of Rule 26(e). The decision as to whether to allow the testimony of Ms. Sykes was within the discretion of the trial court. See Erwin v. Sanders, 294 Ala. 649, 320 So.2d 662 (1975). We find no abuse of discretion in this regard.
Next, appellants contend reversible error occurred when the trial court refused to grant a continuance because of the absence of their subpoenaed witness Deputy Sheriff Ronald Emrich. The law is well settled in this jurisdiction that the grant or refusal of a continuance rests within the discretion of the trial court. Ex parte Driver, 258 Ala. 233, 62 So.2d 241 (1952). The trial court's discretion, however, is not without limitations. In Driver, this court stated certain of those limitations as guidelines for *351 determining whether the absence of a witness warrants a continuance. They may be fairly summarized as follows: It must be shown that the expected evidence will be material and competent; there must be the probability that the testimony can be obtained at a future date to which the cause may be continued or postponed; due diligence must have been exercised by the movant to secure the absent witness or evidence; the expected evidence must be credible and will probably affect the result of the trial; it must not be merely cumulative or in the nature of impeachment; and the motion for continuance must not be made merely for purposes of delay.
Appellants insist they were entitled to a continuance especially in view of the alleged materiality of the expected testimony and their due diligence in attempting to procure Emrich's presence by compulsory process: subpoena and writ of attachment.
After careful review of the record we cannot say that the trial court overstepped the limits of its discretionary powers in this regard. The evidence is that Emrich's testimony would have been merely cumulative. Moreover, a showing that compulsory process has been exhausted does not necessarily constitute a showing of due diligence. Each case must be viewed in light of its peculiar circumstances. Although appellants were aware of the nature of Emrich's employment in law enforcement, there was no showing of any attempt to depose him prior to his absence. Also, defendants put him "on call"; this one does at one's peril. We find no abuse of discretion with regard to this matter.
Thirdly, appellants challenge the trial court's ruling that Medicare payments fall within the collateral source rule. While this court has never directly addressed the applicability of the collateral source rule as regards Medicare payments, we find no error in the lower court's ruling.
Our case law presently contains a statement of the general rule that the fact that the plaintiff received gratuitous medical care, continued salary or wage payments, proceeds from insurance policies, or welfare and pension benefits, will not be taken into account in computing damages. Gribble v. Cox, 349 So.2d 1141 (Ala. 1977). We now implement our rule by adding the following statement as enunciated by the Colorado Court of Appeals:
The collateral source doctrine ... provides that damages recoverable for a wrong are not diminished because the injured party has been wholly or partially indemnified or compensated for his loss by insurance effected by him and to which the wrongdoer did not contribute.... Payments made for Medicare coverage are analogous to insurance payments, and the trial court properly found that defendants were not entitled to a reduction of damages based upon the proceeds of Medicare coverage....
Powell v. Brady, 30 Colo.App. 406, 496 P.2d 328 (1972).
Appellant's fourth contention involves the propriety of the instructions to the jury concerning the duty of care owed by a landowner to a business invitee. Appellants assert that the trial court's charge placed a more stringent standard of care upon them than upon defendant Winn-Dixie. They contend that because they had reserved control over the parking lot and paved areas of the shopping center through their lease agreement with Winn-Dixie, Mrs. Moore occupied the same status, that of business invitee, as to them as she did to Winn-Dixie.
They further contend, however, that the trial court somehow distinguished the duty owed by them, from that owed by Winn-Dixie, on the basis of the lease agreement. As a result, appellants argue, the trial court imposed a higher duty of care upon them than the common law duty to keep the premises in a reasonably same condition for the use of invitees. The lease agreement did, in fact, impose a duty upon appellants to repair. The duty found in the lease, however, is no greater than the common law duty owed by a landlord to a business invitee: to keep the premises in a reasonably safe condition for use.
*352 In the leading case of Mudd v. Gray, 200 Ala. 92, 75 So. 468 (1917), this court addressed a factually similar situation when defining a landlord's common law duty:
....[T]he plaintiff was injured on a stairway jointly owned and controlled by the defendants, and reserved by them for the use in common of the different tenants. Where such is the case, the authorities seem to be very generally agreed that it is the duty of the landlord to use reasonable care to keep in good repair and safe condition such reserved portions of the premises; and if he negligently fails to do so, and the third person on the premises, on the express or implied invitation of the lessee, is injured on account of such defective or unsafe condition, while exercising due care, the lessor is responsible therefor....
Without quoting extensively from the record, we find that the trial judge properly instructed the jury about the duty of care all defendants owed plaintiff. The duty to repair stated in the lease was nothing more than a reiteration of the common law duty of a landlord to a business invitee. We find no reversible error in the court's charge about this.
As their fifth issue, appellants raise the sufficiency of the evidence to support the verdict. The case went to the jury on a negligence and wanton count. The jury returned a general verdict. As stated earlier, the lease agreement between Winn-Dixie and M & L imposed upon M & L a duty to repair the common areas. The lease provides:
The Landlord shall, at its cost and expense, keep and maintain the common areas (including parking areas) in good condition and repair, and shall maintain the exterior of tenant's store building, including the roof, gutter, downspouts, exterior painting, masonry walls, foundation and structural members, and the plumbing (including septic tank, if any) and wiring, of the store building in good condition and repair, and shall make any and all structural repairs to both the exterior and interior of said premises. If any portion of the common areas (including parking area) or any portion of the store building, which is the responsibility of the Landlord, shall at any time be in need of repair, Landlord will repair same immediately upon receipt of written notice from Tenant to do so....
Appellants contend that because they never received written notice from Winn-Dixie they were not liable for a failure to repair. The evidence, however, establishes that Mitchell, the company employed by M & L to perform its management related duties involving the shopping center, sent a representative to the shopping center every three to four weeks to inspect the area and to perform routine inspections and maintenance. Testimony of the Mitchell supervisor is to the effect that any one of these inspections could reveal a condition of disrepair and if there was such a condition, then upon discovery of it the representative could order it repaired without receipt of any prior written notice from the tenant.
In view of this evidence, we find the trial court properly ruled that the purpose of the written notice requirement was to put the landlord on notice that a condition of disrepair existed and needed to be repaired. We further conclude that the trial court properly ruled, and instructed the jury, that there would be no reason for written notice if the landlord knew or should have known of the condition by reason of periodic inspections. Quite obviously the jury found favorably for Winn-Dixie on this point. There was ample evidence to support the verdict against appellants in this regard based upon the negligence count.
It is further contended that even if the evidence was sufficient to support a verdict based upon the negligence count, the record is totally devoid of any evidence of wanton misconduct on the part of the M & L defendants. They argue that because the verdict was general, and because there is no way to determine upon which count the verdict was based, they are entitled to either a judgment non obstante veredicto or a new trial. Again, we must disagree.
*353 A careful review of the record shows that appellants had notice of another fall in the same location, before Mrs. Moore's.[1] In spite of this fact, there is no evidence that appellants ever attempted to investigate or remedy the defect causing the injury. This court has defined wantonness as the conscious doing of some act or the omission of some duty under knowledge of existing conditions, and conscious that from the doing of such act or omission of such duty, injury will likely or probably result. Kilcrease v. Harris, 288 Ala. 245, 259 So.2d 797 (1972). In light of the aforementioned, we conclude the evidence was sufficient to permit the jury to return a verdict upon the wanton count. We will not substitute our judgment of the sufficiency of the evidence for that of the jury and that of the trial court when it reviewed that evidence on post-judgment motion. There is no error in the record because the wanton count was submitted to the jury.
Appellants argue alternatively that in the event the verdict can be supported by the evidence, they are entitled to a new trial or remittitur because the damages awarded are excessive. The jury fixed damages at $75,000. While it is true that Mrs. Moore proved special damages of approximately $5,000, it is equally true, as is well settled, that punitive damages are recoverable when injuries are suffered because of another's wantonness. Appellants' argument on this point is, therefore, without merit.
Finally, appellants contest the entry of judgment for Winn-Dixie on its cross-claim for indemnity. Appellants argue they were entitled to judgment as a matter of law. Cross-claimant, Winn-Dixie, based its claim on the following provisions of its lease with M & L:
The Landlord at its sole cost and expense shall construct the shopping center,... together with all sidewalks, streets, entrance ways, malls, parking areas, service drives, driveways and related improvements, said improvements (excluding buildings) being sometimes hereinafter referred to as "common areas." The Landlord, at its sole cost and expense, shall grade and surface with top quality materials all paved portions of the common areas (including parking area), and shall provide proper and adequate water drainage and lighting system and operations therefor and shall operate and maintain the same in good repair and usable condition for use by the patrons of the shopping center and the tenants and their employees, during the term of this lease and any extensions thereof....
. . . .
The Landlord shall, at its cost and expense, keep and maintain the common areas (including parking area) in good condition and repair ....
Tenant agrees to indemnify and save harmless the Landlord from any claim or loss by reason of an accident or damage to any person or property happening on or about the demised premises.
Likewise, Landlord shall indemnify and save harmless the Tenant from any claim or loss by reason of an accident or damage to any person or property happening on or about all common areas (including parking area) of the shopping center....
It is clear that Winn-Dixie based its cross-claim on M & L's contractual obligation to maintain and repair the common areas.
M & L first contends that the contractual obligation to repair was conditioned upon receipt of written notice from the tenant; therefore, it says, because no written notice was ever received, no actionable breach occurred. We disposed of this contention when upholding the trial court's ruling regarding the written notice requirement, supra.
M & L next asserts that the indemnity provision falls within the general rule in this state that a party may not contract against the consequence of his own negligence, *354 and, such a provision is unenforceable and void as against public policy. Alabama Great Southern Railroad Co. v. Sumter Plywood Corp., 359 So.2d 1140 (Ala. 1978). In Sumter Plywood, a majority of this court stated:
... [T]his court has recognized an exception to the general rule. For example, the court has held exculpatory clauses and indemnity provisions valid, where the contract in question involved a lease or easement....
Later, in Industrial Tile v. Stewart, 388 So.2d 171 (Ala.1980), it was stated:
... The Court has, for many years, held that as between private parties, indemnity contracts are enforceable if the contract clearly indicates an intention to indemnify against the consequences of the indemnitee's negligence, and such provision was clearly understood by the indemnitor, and there is not shown to be evidence of a disproportionate bargaining position in favor of the indemnitee....
. . . .
[I]f the parties knowingly, evenhandedly, and for valid consideration, intelligently enter into an agreement whereby one party agrees to indemnify the other, including indemnity against the indemnitee's own wrongs, if expressed in clear and unequivocal language, then such agreements will be upheld.
In the instant case, the indemnity provision was in a landlord-drafted lease agreement between private parties. The language of the provision clearly indicates an intention to indemnify. According to the plain language of the lease, the maintenance of the common areas is clearly the responsibility of the landlord. For the above stated reason, we hold that Winn-Dixie was entitled to judgment in its favor on its cross-claim.
The judgment of the trial court, in all respects, is due to be and is hereby affirmed.
AFFIRMED.
MADDOX, FAULKNER, JONES, ALMON, SHORES, BEATTY and ADAMS, JJ., concur.
TORBERT, C. J., dissents.
TORBERT, Chief Justice (dissenting).
I dissent. I am unpersuaded that the appellee in this case provided sufficient evidence to permit the jury to make a determination on both of the issues of wanton misconduct and negligence.
Alabama law provides that wantonness and negligence cannot exist in the same act or omission. Tombrello v. McGhee, 282 Ala. 408, 211 So.2d 900 (1968); Milford v. Tidwell, 276 Ala. 110, 159 So.2d 621 (1963); Thompson v. White, 274 Ala. 413, 149 So.2d 797 (1963); Napier v. State, 377 So.2d 1135 (Ala.Cr.App.1979), cert. denied, 377 So.2d 1138 (Ala.1979). In Thompson v. White, this Court clearly defined the law:
Wantonness and negligence cannot exist in the same act or omission, for the reason that wanton or willful misconduct implies mental action; whereas that fact is absent in mere negligence. Wantonness and negligence are hence necessarily distinct colorings of a wrong to another's injury.
274 Ala. at 420, 149 So.2d 797.
In Alabama "wanton conduct" is defined as the committing of an act with reckless indifference to the consequences of the act, or, a failure or omission to do something with a reckless indifference to the consequences of the omission. The party must be conscious of his conduct and, even though he may have no actual intent to injure someone, be aware from his knowledge of the circumstances and conditions then existing, that his conduct would probably result in an injury to another. Roberts v. Brown, 384 So.2d 1047 (Ala.1980); W. T. Ratliff Co. v. Purvis, 292 Ala. 171, 291 So.2d 289 (1974); Tucker v. Cox, 282 Ala. 489, 213 So.2d 222 (1968); Hughes v. Southern Haulers, Inc., 379 So.2d 601 (Ala.Civ.App.1979).
As to the propriety of an award of punitive damages, this Court has held that such damages are not recoverable for simple negligence (upon which slip and fall cases *355 are grounded). The only damages that can be recovered in a simple negligence case are compensatory damages. Fireman's Fund American Insurance Co. v. Coleman, 394 So.2d 334 (Ala.1980); Bradley v. Walker, 207 Ala. 701, 93 So. 634 (1922).
It is well settled that in every negligence action there are three essential elements that must be established to enable a plaintiff to recover. First, a duty must be owed by the defendant to the plaintiff. Second, there must be a breach of that duty. Third, an injury must have proximately resulted from that breach. Quillen v. Quillen, 388 So.2d 985 (Ala.1980); Elba Wood Products, Inc. v. Brackin, 356 So.2d 119 (Ala.1978). Here, there is no question that the defendant owed a duty of care to the plaintiff. Yet the extent of that duty was dependent upon the plaintiff's status on the defendant's property.
If the party was a licensee, then the duty owed to him is not to willfully or wantonly injure him, or not to negligently injure him after finding him in peril. McMullan v. Butler, 346 So.2d 950 (Ala.1977). Here, however, the plaintiff was not a licensee, but an invitee. The defendant-invitor thus had a duty to exercise reasonable care in maintaining its premises as used by the plaintiff-invitee, and to keep those premises in a reasonably safe condition. Yet the invitor is not the insurer of the safety of its invitees. Shaw v. Lipscomb, 380 So.2d 812 (Ala.1980); Foodtown Stores, Inc. v. Patterson, 282 Ala. 477, 213 So.2d 211 (1968); S. H. Kress & Co. v. Thompson, 267 Ala. 566, 103 So.2d 171 (1957). Thus, the invitor is liable only for its negligence in failing to exercise reasonable care in maintaining his premises. 267 Ala. at 569, 103 So.2d 171.
The majority's decision to affirm the verdict on the wanton count relies upon prior notice to the appellants of another fall in the same location. This prior accident, however, occurred nearly two years before the instant accident and furnishes no inference that it resulted from some defective or dangerous condition or was anything other than an isolated slip and fall.
The only other possible evidence of knowledge of notice of some potentially dangerous condition came from Winn-Dixie's store manager, Jack Hutchinson. Mr. Hutchinson testified that even though he was aware of a crack between the sidewalk and the ramp and considered the defect dangerous, at no time did he notify the appellant of the condition, either before or after the plaintiff's accident.
At the very most, appellant's notice of a prior fall should be construed as evidence of negligence and not of wantonness. In City of Birmingham v. Wright, 379 So.2d 1264 (Ala.1980), the plaintiff sued the city after falling and injuring herself because of a depression in a sidewalk. There the issue was whether the record contained a scintilla of evidence that the city had notice of the defect in the sidewalk. This Court found that a scintilla of evidence existed, tending to prove negligencenot wantonness. 379 So.2d at 1265-66. Similarly, any notice in the instant case should tend to prove negligence and not wanton conduct.
In Schuler v. Nelson Weaver Companies, Inc., 270 Ala. 727, 121 So.2d 908 (1960), the facts were somewhat similar to those of the instant case. The plaintiff brought suit to recover for personal injuries sustained as a result of a fall down some steps at the rear of defendant's building. There were two counts in the complaint: one charging negligence and one charging wantonness. The wanton count was submitted to the jury, but a new trial was granted which was affirmed on appeal. The evidence showed that there was no handrail on the steps, which were apparently about four-and-one-half feet high, and that they were constructed of a smooth, slick, concrete finish and were considerably slicker when wet. The injured plaintiff's husband was an employee of the defendant. Significantly, plaintiff's husband testified that he had informed the defendant's manager that the steps were slick and that some corrective measure should be taken, but that no correction, however, was made. Another employee of defendant testified that she had slipped on the step but had not fallen. On the day of the accident, the plaintiff was *356 injured while entering the building during a rain.
While the Court did not specifically address the issue of notice and the failure to take corrective action it held:
No case has been cited to us and we have found none where any court has held that evidence similar to that presented in this case was sufficient to go to the jury on a charge of wantonness.
270 Ala. at 730, 121 So.2d 908. The Court went on to say that no one had ever fallen on the steps as far as the record disclosed, and held that the absence of handrails on the stairs, when considered with the slipperiness of the stairs, was insufficient to show wanton conduct on the part of the defendant in the maintenance of the steps.
I believe that the holding of that case would likewise apply here and that no wanton misconduct claim can be sustained. For the foregoing reasons, I would reverse on the issue of submitting the claim based on wanton misconduct.
NOTES
[1] The transcript of the evidence shows that M & L stipulated it had notice of the prior fall when plaintiff sought to introduce M & L's answers to interrogatories to that effect.