HORNSBY, Chief Justice.
This appeal arises out of the trial court’s denial of the plaintiff’s motion for a continuance.
Barbara Thompson, as administratrix of the estate of Lemon Works, filed a wrongful death action against Carraway Methodist Medical Center on March 4, 1982, alleging that the death of Lemon Works was the result of medical negligence on the part of the hospital. Works had died on September 28, 1980, as a result of a right subdural hematoma. Works had been admitted to Carraway Methodist Medical Center, where he underwent heart surgery. While recovering from his surgery, Works, on September 21, 1980, apparently tried to get out of his bed and fell. He told the nurses that he had hit his head. The nurses and his attending physician examined him and found no apparent injury. Later that day, Works’s condition deteriorated, and he was transferred to the intensive care unit. A CAT scan was performed. This test revealed that Works had a right subdural hematoma. A right front temporal cranio-tomy was performed. The hematoma was encased, indicating that it was more than 48 hours old and predated Works’s fall from his bed. He died on September 28, 1980.
After the plaintiff filed her complaint, the trial in this case was continued and was reset on many occasions. The trial was initially set for October 21,1985, but it was continued seven times upon the plaintiff’s motion. The defendant requested only one continuance. The case was given a priority trial setting “as a special for any judge”[1] for May 21, 1990. In its order the trial court stated:

“ORDER AND JUDGMENT

“This case was assigned for trial ... at the call of the docket, Friday, May 18, 1990. Prior to empaneling a jury [on May 21, 1990, the day set for trial,] plaintiff moved for a continuance, which was denied for the reasons set out herein. Thereafter, the case was submitted for an adjudication on the merits by the Court.

“ORDER ON MOTION TO CONTINUE

“1. On March 4, 1982, plaintiff filed this action against the defendant hospital claiming the plaintiff’s decedent, Mr. Lemon Works, died as a result of medical malpractice.
“2. From the filing of the lawsuit through June, 1989, ... this case was set for trial nine times and on seven, and perhaps eight, of these occasions [it] was continued at the request of the plaintiff. From the record, the only continuance clearly granted at the instance of the defendant related to an appearance of the case on the regular trial docket after it was already scheduled for trial at a special setting.
“3. On December 12, 1989, this case was called on the ... docket and was set for trial as a special for any judge on May 21, 1990.
“4. On May 15, 1990, the plaintiff filed a motion to continue on the grounds that plaintiff’s counsel had a case in Wilcox County the same week and that the plaintiff would be unable to attend the trial of this case the week of May 21, 1990. After a hearing before the Presiding Judge, this motion was denied.
“5. The plaintiff’s only identified expert witness, Mr. Harold Althouse, was *483 deposed on October 14, 1985. Mr. Alt-house limited his opinions as a nurse regarding the standard of care for nurses in this case to three areas. In Mr. Althouse’s opinion, the standard of care required: (1) that the nurses on September 21, 1980, when, the decedent, Mr. Works, was found on the floor, examine Mr. Works while he was still on the floor; (2) that the side rails on Mr. Works’ bed to have been in the up position immediately prior to the time Mr. Works was found on the floor on September 21, 1980; and (3) that Dr. Riley, Mr. Works’ attending physician, to have been notified of Mr. Works’ fall by the nurses.
“6. On September 30, 1986, the plaintiff supplemented her answers to interrogatories pursuant to an order on defendant’s motion to compel plaintiff to answer ..., setting forth in detail the basis for a claim that defendant was negligent and the facts upon which she based the claims in her complaint:
“ ‘ * * * Carraway Methodist Medical Center, by and through its nursing staff, negligently failed to properly monitor the plaintiff's intestate post-operatively; they negligently failed to adhere to the policies and procedures regarding the use of bed rails for acutely ill patients, and were also negligent in failing to properly advise to the physician responsible the nature and extent of the injury to Mr. Works and also were negligent in failing to properly document the nature and extent of Mr. Works’ fall and injuries.’ “ ‘ * * * Mr. Works, though document-edly disoriented and in poor condition, was not monitored in a reasonable manner by the nursing staff at Carra-way Methodist Medical Center. It is the plaintiff’s contention that the staff negligently failed to observe its own rules and regulations with regard to bed rails, negligently failed to monitor Mr. Works on a regular basis, negligently failed to follow up on the injury after it was discovered, and failed to provide necessary information to the physician.’
“7. On May 17, 1990, plaintiff filed another motion to continue on the ground that plaintiff’s expert would be unable to testify at trial by reason of his advanced chronic pulmonary emphysema. An exhibit to the motion showed that the plaintiff’s expert was contacted on or about May 11, 1990, about the trial setting of May 21, 1990, and that the plaintiff’s expert had been unable to travel for at least eighteen months. Although a hearing on this motion was held Friday, May 18, ... no order was entered and the motion was renewed by plaintiff....
“8. In light of the time this case has been pending, the multiple times the case has been set for trial, the length of time plaintiff has been on notice of this trial setting, the delay in bringing the problem relating to plaintiff’s expert’s unavailability for trial to the attention of the Court and defendant, the substantial hardship worked on defendant by another continuance (cost and expenses of repeated preparation, expenses already incurred incident to making arrangements for attendance at this setting of nurses now living out of state and tyhose voluntary cooperation [given multiple prior continuances] was at an end, and the disruption worked on the schedule of the physicians involved in the decedent’s care), plaintiff’s motion for a continuance was due to be and was denied Monday, May 21, 1990.”[2]
The issue for our consideration is whether the trial court abused its discretion in denying the plaintiff’s motion to continue. We conclude that it did not, and we affirm.
The grant or denial of a continuance is within the trial court’s discretion, but the court’s discretion is not without limits. Scullin v. Cameron, 518 So.2d 695 (Ala. 1987); Mitchell v. Moore, 406 So.2d 347 (Ala. 1981); Ex parte Driver, 258 Ala. 233, 62 So.2d 241 (1952). On appeal, the trial court’s refusal to grant a continuance will not be disturbed unless there is a showing of an abuse of discretion. Selby v. Money, *484 403 So.2d 218 (Ala. 1981); Perdue v. Mitchell, 373 So.2d 650 (Ala.1979). See also Steele v. Gill, 283 Ala. 364, 217 So.2d 75 (1968).
This Court has held that the mere unavailability of a witness does not require that the trial court grant a continuance. Spence v. Baldwin County Sav. & Loan Ass’n, 533 So.2d 192 (Ala.1988); Perdue v. Mitchell, supra. However, we have set out the following “guidelines for determining whether the absence of a witness warrants a continuance”:
“It must be shown that the expected evidence will be material and competent; there must be the probability that the testimony can be obtained at a future date to which the cause may be continued or postponed; due diligence must have been exercised by the movant to secure the absent witness or evidence; the expected evidence must be credible and will probably affect the result of the trial; it must not be merely cumulative or in the nature of impeachment; and the motion for continuance must not be made merely for purposes of delay.”
Mitchell v. Moore, supra, at 350-51. As further stated by this Court, “[e]ach case must be viewed in light of its peculiar circumstances.” Id. at 351.
In the present case, considering the reasons stated by the trial court, we find no abuse of discretion in the trial court’s denial of the plaintiffs motion to continue. Additionally, the trial court stated further in its findings of fact:
“The court, after a full examination of the evidence before it, finds that there is no evidence and certainly no [credible] evidence to support the testimony of plaintiffs expert regarding a breach of the standard of care by the defendant’s nurses in their care of plaintiff’s decedent. The court notes that Mr. Althouse testified only on the basis of information in the medical chart, and without considering the incident report which had been provided to plaintiff’s counsel. The court finds it hard to believe that someone with Mr. Althouse’s claimed expertise would not have insisted on seeing the incident report, which he knew should have existed. Be that as it may, there is no evidence to show any causation between either an alleged failure on the nurses’ part to report Mr. Works’ fall immediately to the physician or an alleged failure to examine Mr. Works while he was still on the floor (both of which the court is convinced were in fact done) and Mr. Works’ death. Thus, such testimony by Mr. Althouse in its full glory would have availed plaintiff nothing.
“The same is true with respect to the position of Mr. Althouse that there was a breach of the standard of care by the nurses responsible for Mr. Works in their alleged failure to see that the side rails on his bed were up. Althouse would say, if permitted, that the side rails were down because Nurse Romano only made note of the position of the rails at the beginning of the shift. This criticism of Ms. Romano’s charting is not sufficient to raise a scintilla of evidence that the rails were down at the time Works tried to get out of bed. This is at best only criticism of a method of charting, since Nurse Romano explained that she would chart the position in which the rails were to be kept only once a shift and would chart the position again only if the position in which the rails were to be kept were to change. What is more, Althouse did not have the benefit of the incident report when he testified, which clearly states that the rails were up before and at the time of Mr. Works’ fall. Ms. Romano’s testimony again corroborated this. Moreover, the court finds that the vast weight of the evidence is against Althouse in his speculation that Works simply rolled out of the bed because the rail was down. Works was found sitting on the floor, not lying parallel to the bed, within seconds after the fall. There is nothing to suggest that Works could have or did arise from a recumbent position on the floor to sit against the wall near the end of the bed, leading the court to the conclusion that Works tried to exit around the end of the bed rail and get out of bed, as he said he did. In short, the court finds that the rails were up at *485 the time of the incident made the basis of this suit. Again, Althouse’s testimony would not bridge this gap in the evidence, since nothing he could say would change these unalterable facts.
“In the end, however, there is an insurmountable impediment to plaintiffs recovery in this case, unrelated to anything Althouse may have said. There is no evidence Works died from any injury sustained in the fall. This link could not be supplied by a nurse, but only by a physician.”
Based upon the foregoing, we affirm the trial court’s judgment for the defendant, Carraway Methodist Medical Center, because we find no abuse of discretion in the trial court’s denial of the plaintiff’s motion to continue.
AFFIRMED.
ALMON, ADAMS, STEAGALL and INGRAM, JJ., concur.

. The phrase "as a special for any judge" is an apparent indication that the case was not assigned to any particular circuit judge, but was to be heard by any judge available for certain cases on an expedited basis.

. The trial court entered judgment for the defen- dant.