Lloyd WILLIS and Charlotte Willis, Plaintiffs–Appellees,

v.

NOWATA LAND AND CATTLE COMPANY, INC., an Oklahoma Corporation, and John Gilmartin, an individual, Defendants–Appellants.

No. 64719.

Supreme Court of Oklahoma.

Oct. 31, 1989.

Rehearing Denied April 30, 1990.

Bill Ladd, and Kenn Bradley, Tulsa, for defendants-appellants.

Marion Dyer, Broken Arrow, for plaintiffs-appellees.

OPALA, Vice Chief Justice.

The dispositive issue for decision in this *postconfirmation* stage of foreclosure suit is whether there was error in denying mortgagor's (borrower's) quest for credit in the amount of insurance proceeds previously decreed to the lender (mortgagee). We answer in the negative and hold that the claimed indemnity payment for a fire loss is not available as credit on the judgment against borrower for the balance of its mortgage debt.

## THE ANATOMY OF LITIGATION

In a foreclosure suit against Nowata Land and Cattle Company and John Gilmartin [collectively called borrower], *in personam* judgment for $166,051.75 was given to Lloyd Willis and Charlotte Willis [mortgage lenders called lenders]. Lenders then acquired the property at a sheriff's sale for $167,500.00, applying the amount of their judgment and paying $1,448.25 for the purchase. The sheriff's sale to the mortgage lender stood confirmed but its effect was stayed pending borrower's appeal. The day *after* confirmation, while the stay was in effect, the premises were destroyed by fire. The trial court ruled the insurance proceeds ($129,241.07), which had been deposited with the court clerk pending judicial determination of the rightful claimant, should be disbursed to the lenders. The trial court's postdecree orders confirming the sale and awarding the fire loss indemnity to the lender spawned two separate appeals [*Nowata I* and *II*], both of which resulted in an affirmance.[1] In this appeal

---

1. *Lloyd Willis and Charlotte Willis v. Nowata Land and Cattle Company, Inc. and John Gil-* *martin,* No. 59, 130 (November 29, 1983, unpublished opinion) [*Nowata I*].

[*Nowata III*],[2] the trial court refused to give the borrower credit on the adjudicated mortgage debt for the amount of insurance proceeds.

I

PRECONFIRMATION LITIGATION
[*NOWATA I* AND *II*]

In *Nowata I* the controversy was over the borrower's claim that it was erroneously denied the right to redeem *prior to confirmation.* The Court of Appeals held the borrower was afforded the maximum permissible time to exercise the right of redemption but failed to do it timely.

*Nowata II* was a declaratory judgment suit to determine a contest between the borrower and lenders for the insurer's fire loss deposit. We held that the trial court's stay of the confirmation order, in effect when the fire occurred, operated to (a) postpone the vesting in the purchaser of both title and possession beyond the point of the fire loss [3] and (b) extend, beyond the time of confirmation, the borrower's opportunity for redemption of its mortgaged property.[4] Because the fire had occurred before legal title and possession came to be severed from the borrower, the borrower retained an insurable interest in the mortgaged premises at the time of the loss.[5] So

long as the borrower's insurable interest remained unextinguished the mortgage lender had an equitable charge on the fire indemnity proceeds.[6] The stay also operated to freeze the parties in their *preconfirmation* status—that of *mortgagor/mortgagee.* This is the posture in which they stood when the fire consumed the mortgaged premises.[7] In sum, *Nowata II* held that when mortgaged property is insured by a borrower in fulfillment of a contractual obligation, the proceeds of the loss are impressed with an equitable charge in favor of mortgage lender to the extent of its interest.[8]

*Nowata I* and *II* addressed themselves *solely* to *preconfirmation* issues. In the present contest (*Nowata III*) a litigable *postconfirmation* issue clearly appears to have been tendered—i.e., whether the borrower was entitled to a credit, on the mortgage debt judgment for the lenders, in the amount of fire loss proceeds.

■ While the borrower's postconfirmation motion now under review is titled "motion to vacate sheriff's sale for failure of consideration or order to require payment of purchase price", we find it, as the trial court did, utterly devoid of any tenable legal or equitable ground for either vacation or modification of the terms of the sheriff's sale. Viewing the language of the borrower's motion in a light most favorable to the pleader, we can only conclude from its language that it presents a

---

*Nowata Land and Cattle Company, Inc. and John Gilmartin v. Lloyd Willis and Charlotte Louise Willis,* No. 60,509 (March 28, 1984, unpublished order) [*Nowata II*].

2. The present ancillary postdecree proceeding was concluded when the trial judge denied the borrower's December 26, 1984 motion—entitled Motion to Vacate Sheriffs Sale For Failure Of Consideration or Order to Require Payment of Purchase Price. The decision now on review followed a June 7, 1985 hearing. The June 7 *hearing stood confined to the lawyers' legal arguments; neither party offered testimonial or documentary evidence.*

3. A judicial sale on foreclosure is neither conclusive nor binding, in the sense of transferring title, until it is effectively confirmed. 12 O.S. 1981 § 765; *State ex rel. Com'rs of Land Office v. Warden,* 197 Okl. 97, 168 P.2d 1010, 1014 [1946].

4. By the stay and subsequent posting of the required undertaking the borrower could avoid the effect of 12 O.S.1981 § 774 whose provisions make judicial sales impervious to invalidation upon appellate reversal or the trial court's postconfirmation vacation. *Wagoner Oil & Gas Co. v. Marlow,* 137 Okl. 116, 278 P. 294, 308 [1929].

5. *Phoenix Fed. Sav. v. Great Southwest Fire,* Okl. App., 603 P.2d 356, 358 [1979]; *Carr v. Union Mut. Ins. Co.,* Okl.App., 598 P.2d 269, 270 [1979].

6. *Phoenix Fed. Sav. v. Great Southwest Fire, supra* note 5 at 358.

7. *Wilks v. Wilks,* Okl., 632 P.2d 759, 763 [1981].

8. See *Nowata II, supra* note 1; see also *Chipman v. Carroll,* 35 P. 1109, 1111 [Kan.1894].

postconfirmation quest for credit in the amount of fire loss proceeds previously decreed to the lenders in *Nowata II.*[9]

■ We find nothing in the earlier two *Nowata* appeals that operates to settle the precise issue raised by the borrower's demand now before us.[10] The tendered issue *did not even arise* until *after* the lenders had emerged victorious in *Nowata II.* In short, neither of the two prior appeals bars borrower from claiming credit on the judgment for the mortgage debt in the amount of insurance proceeds decreed to the lenders in *Nowata II.*

## II

## POSTCONFIRMATION LITIGATION [*NOWATA III*]

■ Postconfirmation litigation may not extend beyond issues that arose *after* the sale and confirmation. These issues generally fall into three categories: (1) amount of deficiency, if any, that may be due the lender[11] (2) claim to postsale surplus in the hands of the court clerk[12] or (3) *any other credit* the borrower may seek on the amount of lender's judgment for the unpaid balance of the borrower's mortgage debt.

■ Had the lenders pressed for a deficiency judgment, the borrower clearly would not have been barred from counterclaiming for surplus or any other credit.[13] Similarly, here, the borrower raises a genuine postconfirmation issue by its quest for the fire loss indemnity; if allowed to reduce the amount due lender on the judg-

---

**9.** Lenders argue that the district court was without power to modify its confirmation order after thirty days. 12 O.S.1981 § 1031.1. Thus, they urge the borrower's quest for vacation or modification of the sheriff's sale came too late. In response, borrower asserts that it is only seeking to "correct the record to reflect the findings of this court [in its *Nowata I* and *II* opinions]." We agree with the borrower that the § 1031.1 time limit is not applicable to its credit quest because we are dealing here with a postdecree credit issue rather than with an attempted modification of the decree itself. We know of *no* statutory time barrier to a postsale claim to credit *after* a foreclosure sale, and no such limit has been suggested by the lenders. The meaning and effect of any court-filed paper—be it a motion, a pleading or some other instrument—is to be measured by its content rather than by the author-provided title. *Hulsey v. Mid–America Preferred Ins. Co.*, Okl., 777 P.2d 932, 936, n. 14 [1989]; *Horizons, Inc. v. KEO Leasing Co.*, Okl., 681 P.2d 757, 759 [1984]; *Amarex, Inc. v. Baker*, Okl., 655 P.2d 1040, 1043 [1983]; *Knell v. Burnes*, Okl., 645 P.2d 471, 473 [1982]; *Ginn v. Knight*, 106 Okl. 4, 232 P. 936 [1925]. *We hence treat borrower's motion as its postconfirmation demand for credit on the mortgage debt judgment in the amount of fire loss indemnity.*

**10.** The settled-law-of-the-case doctrine operates to bar relitigation of *only* those issues that *were actually settled* by an appellate opinion. See *Mobbs v. City of Lehigh*, Okl., 655 P.2d 547, 549 [1982]; *Veiser v. Armstrong*, Okl., 688 P.2d 796, 800 [1984]; *Mullins v. Ward*, Okl., 712 P.2d 55, 61 [1985]; *Muncrief v. Memorial Hosp. of So. Okl.*, Okl., 767 P.2d 400, 403 [1988]; *Reeves v. Agee*, Okl., 769 P.2d 745, 756–757 [1989].

**11.** A deficiency judgment may be sought "... [s]imultaneously with the making of a motion for an order confirming the sale or in any event within ninety (90) days *after* the date of sale...." [Emphasis added.] 12 O.S.1981 § 686

Unless a deficiency judgment is sought, the lender is confined to the sale of the mortgaged property for the satisfaction of the mortgage obligation. Deficiency judgment is a *post-judgment* prerequisite for the issuance of a general execution to enforce the unpaid balance due on the mortgage. *Baker v. Martin*, Okl., 538 P.2d 1048, 1051 [1975] *quoting* from *Ingerton v. First Nat'l. Bank & Trust Co. of Tulsa*, 291 F.2d 662, 665 [10th Cir.1961]; *R.F.C. v. Breeding*, 211 F.2d 385, 390 [10th Cir.1954].

**12.** For a general discussion of surplus disposition and of deficiency judgments, see Nelson and Whitman, Real Estate Finance Law, Chapters 7, § 7.31 and 8, § 8.1 [1985]. *See also* Wiltsie on Mortgage Foreclosure, Vol. 3, Chapter XLIX on Deficiency Judgments and Chapter L on Surplus Moneys [1939].

**13.** If the *court clerk* had proceeds from a sheriff's sale—i.e., funds in *excess* of the amount necessary to pay the mortgage debt and costs— the *excess* would be refundable to the borrower. Our statutory law provides for the payment to the judgment debtor (borrower-mortgagor) of surplus *after* sale. The terms of 12 O.S.1981 § 773 are:

"If, on any sale made as aforesaid, there shall be in the hands of the sheriff or other officer *more money* than is sufficient to satisfy the writ or writs of execution, with interest and costs, the *sheriff or other officer shall, on demand, pay the balance to the defendant* in execution." [Emphasis added.]

ment, the insurance proceeds would not so much *alter* the terms of the now confirmed judicial sale as they would create postconfirmation credit in borrower's favor.[14]

There are two types of insurance policy clauses which protect the mortgage lender against hazards of loss or damage to mortgaged premises: (1) the loss payable clause and (2) the standard mortgage clause.

Under the *loss payable clause* the mortgage lender has a derivative right to recover the insurance proceeds, which is *completely dependent* upon the validity of mortgagor's (borrower's) claim against the insurer.[15] The mortgage lender's interest in the funds is treated as a security for his debt and ceases when the debt is extinguished.[16]

The *standard mortgage clause*, on the other hand, operates to create an *indepen-*

*dent contract* between the insurer and the mortgage lender so as to protect the latter from the borrower's misconduct[17] and to shield the lender's own interest in the property.[18] *This clause is similar in effect to the general indemnity principles; both treat insurance proceeds as replacement for the destroyed property, rather than as payment toward mortgage debt's satisfaction. Because the policy itself was not included in this appellate record, we must assume the insurance contract provisions in force when fire occurred contained the standard mortgage clause.*[19]

## CONCLUSION

In summary, the trial court correctly refused to grant the relief sought by the borrower. A judgment must be affirmed even when it was given for incorrect reasons if it is sustainable on any legal or

Generally, the purchaser at a foreclosure sale is not bound to oversee the application of the sale proceeds. *Hopkins v. Harris*, 78 Okl. 145,.189 P. 192, 193 [1920]. The purchaser is protected if he fully obeys the trial court's orders. *Hopkins v. Harris, supra.*

14. According to the borrower's calculations, (a) the amount due on the judgment must be deemed reduced by the amount of insurance credit [$166,051.75 − $129,241.07 = $36,810.68]; (b) the balance due lenders amounted only to $36,810.68; and (c) lenders could apply only $36,810.68 toward the purchase of the property for which they bid the amount of $167,500. If lenders had considered their judgment reduced by the amount of the fire loss proceeds and then added the cash they had deposited with the court clerk [$36,810.68 + $1,448.25], they would now owe "borrower" a balance of $129,241.07 in postsale "credits".

15. *Conner v. Northwestern Nat. Cas. Co.*, Okl., 774 P.2d 1055, 1057 [1989]; 5A J. Appleman and J. Appleman, Insurance Law and Practice, § 3401, at p. 284 [1970]; G. Couch, Couch on Insurance 2d, §§ 42.705 [rev. ed. 1982].

16. Couch, *supra* note 15 at § 42.695.

17. *Conner v. Northwestern Nat. Cas. Co., supra* note 15 at 1056; *Oklahoma State Union of Farm. Ed. & Coop. U. v. Folsom*, Okl., 325 P.2d 1053, 1056 [1958].

18. See 7 Valparaiso L.Rev., *infra* note 19 at 494; Couch, *supra* note 15 at 42:746.

19. See Lev, Mortgagees and Insurers: The Legal Nuts and Bolts of Their Relationship, 12 Forum

1012, 1013 [1977], where the author states that "[t]he loss payable-standard mortgage clause dichotomy is important to understand, but, frankly, is of diminishing interest as time goes on. *This follows from the fact that today, mortgagees are almost universally insured under standard mortgage clauses, not loss payable clauses.*" See also Comment, Foreclosure, Loss, and the Proper Distribution of Insurance Proceeds Under Open and Standard Mortgage Clauses: Some observations, 7 Valparaiso L.Rev. 485, 487, 498 [1973]; Nelson and Whitman, Real Estate Finance Law, § 4.14 [1985]; Couch, *supra* note 15 at 42:718.

We will take judicial notice of Form No. 127–B, September 1934 edition, titled Standard Mortgage Clause, which was approved by the State Board for Property and Casualty Rates on April 6, 1981. See 36 O.S.1981 § 307 [later amended in 1986 and 1987 (Okl.Sess.L.1986, Ch. 207, § 77 and Okl.Sess.L.1987, Ch. 210, § 4)]. The form was later adopted by the Insurance Commissioner (by authority of 36 O.S.Supp.1983 § 307.1.) in its May 11, 1989 Property and Casualty Rule for Form Filing, Rule 36–9–1. See also 36 O.S.1981 § 4803 for the standard fire insurance policy provisions. Section 4803 was amended in 1985 (Okl.Sess.L.1985, Ch. 100, § 1, eff. Nov. 1, 1985).

*We find nothing in the language of Form 127–B which requires mortgagees to apply insurance proceeds toward reduction of the mortgage debt. Rather, indemnity for loss or damage is due the mortgagee "as interest may appear".*

equitable theory.[20]

We accordingly hold that borrower pressed *no* legally tenable ground for either vacation or modification of the terms of the sheriff's sale or of the order confirming it. Insofar as we construe and treat borrower's overbroad demand as its postconfirmation plea for credit, the claim must also fail (a) for want of a showing that lenders were bound—either by the terms of a policy clause or otherwise—to apply the insurance proceeds toward the satisfaction of mortgage debt, and (b) because in law, insurance proceeds under standard mortgage clause represent indemnity for loss or harm to lenders' *own* interest. We need *not* decide today and hence save for another day the question whether the insurer's indemnity for fire loss would have been available as credit to the borrower on its mortgage obligation if borrower had *timely* exercised its right to redeem the premises.[21]

The trial court's postdecree order denying relief is affirmed.

HARGRAVE, C.J., and HODGES, LAVENDER and WILSON, JJ., concur.

SIMMS, J., concurs in judgment.

SUMMERS, J., concurs in result.

KAUGER, J., concurs in part and dissents in part.

---

**20.** *Utica Nat. Bank & Trust v. Assoc. Prod. and City of Lawton,* Okl., 622 P.2d 1061, 1066 [1981].

**21.** *Lincoln Mortg. Investors v. Cook,* Okl., 659 P.2d 925, 928 [1982]; *State ex rel. Com'rs of Land Office v. Warden, supra* note 3.