Steve HANDY and Susan Handy, Appellees,

v.

The CITY OF LAWTON, a Municipal Corporation, Appellant.

No. 74064.

Supreme Court of Oklahoma.

July 14, 1992.

Lampkin, McCaffrey & Tawwater by Bob Behlen, Oklahoma City, for appellees.

Felix A.D. Cruz, City Atty., Lawton, for appellant.

HODGES, Vice Chief Justice.

The threshold issue in this case is whether, on a second appeal, the Court of Appeals was bound by its decision in the first appeal. We answer in the affirmative. After the district court granted summary judgment in favor of the defendants, the plaintiff appealed. The Court of Appeals, Division 2, vacated the summary judgment and remanded the case. After the time lapsed for filing a petition for certiorari, that decision became final. After a jury trial, the case was appealed a second time. On the second appeal, the Court of Appeals, Division 1, rendered a decision inconsistent with the decision in the first appeal.

On the afternoon of April 2, 1986, Steve Handy, the plaintiff (Handy), was standing in his front yard with his brother. Handy was a police officer for the City of Lawton, defendant (City). He was not on duty at the time. Gary Grzeskiewicz, also an officer with the City, arrived in his patrol car at his residence across the street from the Handy residence. Grzeskiewicz got out of his car and went in his house. Remembering that he had forgotten his house keys, he went back outside. On the way to get his keys out of the car, he and Handy exchanged quips. At that time, Grzeskiewicz drew his weapon and waved it in the air. While Grzeskiewicz was returning the gun to the holster, it discharged striking Handy on the right side of his face. This incident occurred at 2:57 p.m. Grzeskiewicz's shift ended at three o'clock.

Handy was taken to the hospital. He returned to light duty about a month after the incident. In early August, Handy returned to full duty status.

Handy and his wife, Susan, filed suit against Grzeskiewicz and the City of Lawton alleging that the City of Lawton failed to properly hire, train and supervise its employees and that the city was liable on the theory of respondeat superior based on Grzeskiewicz's negligence. The City moved for summary judgment arguing that at the time of the incident Grzeskiewicz was not acting within the scope of his employment. The trial court granted the motion.

Handy appealed the trial court's ruling. The Court of Appeals, Division 2, in an unpublished opinion vacated the summary judgment finding that a material dispute of facts existed and remanded the case (Handy I). No petition for certiorari was filed and the decision of the Court of Appeals, Division 2, became final.

Grzeskiewicz was voluntarily dismissed from the lawsuit. The case was tried to a jury. At the end of Handys' evidence, the City's demurrer as to the issue of improper hiring, training and supervising of Grzeskiewicz was sustained. But the City's demurrer as to the issue of respondeat superior was overruled. At the conclusion of trial, the City's motion for directed verdict on the issue of respondeat superior was overruled. The jury returned a verdict in favor of both Steve and Susan Handy. The City moved for a judgment notwithstanding the verdict or a new trial. The motions were denied.

The City appealed the denial of the demurrer, the jury's verdict, the denial of the motion for directed verdict, and the denial of the motion for judgment notwithstanding the verdict and for a new trial. The Court of Appeals, Division 1, reversed the jury's verdict and found that Grzeskiewicz was not acting within the scope of his employment when the incident occurred (Handy II). Division 1 determined that the trial court erred when it denied the City's motions for a demurrer and for a directed verdict. It reversed the trial court's order denying the City's motion for new trial and the judgment entered on the jury verdict. The Handys filed a Petition for Certiorari arguing that the Court of Appeals, Division 1's reversal was against the law of the case as established by Division 2's opinion finding summary judgment improper.

■ "Neither demurrer to evidence nor motion for directed verdict should be sustained unless there is an entire absence of

proof to show any right to recover." *Fletcher v. Meadow Gold Co.*, 472 P.2d 885, 888 (Okla.1970). Both a demurrer and a motion for a directed verdict should be denied when there is a dispute of material fact or when reasonable minds could differ. *Id.* This is the same standard applied to a motion for summary judgment. *See Roach v. Atlas Life Ins. Co.*, 769 P.2d 158, 163 (Okla.1989). In reversing the district court's grant of summary judgment in this case, Division 2 of the Court of Appeals implicitly found a dispute of material fact and that reasonable minds could differ on the facts presented. *See Id.*

■ The evidence presented at trial was substantially the same as the facts argued in the motion for summary judgment. If reasonable minds could differ when those facts were presented on summary judgment, then reasonable minds could differ when the same facts were presented at trial.

In the syllabus of *Safeway Stores, Inc. v. Fuller*, 193 Okla. 237, 142 P.2d 849 (1943), this Court stated, "The decision on first appeal is 'law of the case' in all subsequent stages, and will not ordinarily be reviewed on second appeal, where facts are substantially the same." Division 2's decision that reasonable people could differ on the facts in the evidentiary material presented in the motion for summary judgment became the law of the case and that issue was not reviewable thereafter. The facts presented at trial were substantially the same as those presented in the motion for summary judgment. Division 2's decision finding a dispute of fact was binding on the trial court and on subsequent appeals. Therefore, the Court of Appeals, Division 1, erred when it found that the trial court should have granted the demurrer and the motion for a directed verdict and remanded for a new trial. Division 1 was bound by Division 2's decision.

■ The City argues that its liability for the tortious acts of an employee rests, not only upon proof that its employee's action was within the scope of his employment, but also upon the evidence that the act was done as a means of carrying out his duties. *See Mistletoe Express Service v. Culp*, 353 P.2d 9, 16 (Okla.1960). According to the City, the Court of Appeals decision in Handy I was based entirely upon the "scope of employment" prong. The City contends that neither the evidentiary materials submitted to support the summary judgment, or its reversal, or any trial evidence raises a genuine issue of material fact concerning the second prong.

The Court of Appeals in Handy I must have considered both prongs of the rule because it quoted the standard that an employer is liable for harm inflicted while the agent is acting within the "scope of employment" and the act is an incident of the employee's service to the principal. Because the Court of Appeals found summary judgment improper on the issue of the City's liability, it necessarily found that there were genuine issues of fact as to the second prong, as well as the first prong.

■ An appellate court's decision settles and determines, not only all questions actually presented, but all questions existing in the record and involved in the decision by implication. *See Jones v. Medlock*, 201 Okla. 109, 202 P.2d 212 (Okla.1948). When Handy I was brought, all of the facts about both the scope of the officer's employment and the requirements for carrying out his duties were known or could have been developed. The sufficiency of those same facts were determined by the Court of Appeals in Handy I and may not be questioned on subsequent appeal.

■ Even if we were to assume that under the law-of-the-case doctrine, the decision in Handy I did not bar the issue for subsequent litigation, there is ample evidence requiring the submission to the jury of both aspects of the test for respondeat superior liability. For example, the following testimony supports the verdict: The shooting occurred while the officer was "on duty;" he had not signed off on his police radio; he was not only in uniform and carrying a weapon but was required to be in uniform and carry a weapon; the officer's squad car was at the shooting scene; he was required to take his squad car home

as part of the policy of crime deterrence; he was required to respond to calls upon request even after his shift ended; he responded to the shooting by calling the police dispatcher; a firearms review board that investigates complaints of firearm misuse by officers while performing official acts found him in violation of policy; this was not an isolated occurrence of weapon misuse by Lawton police officers; and an important component of the City's crime deterrence is the presence of uniformed officers with weapons. Therefore, even if the law-of-the-case doctrine did not apply here, the Court of Appeals erred when it reversed the jury's verdict based on the evidence presented at trial.

 The City also appealed the trial court's post-trial denial of the Motion for Remittitur. The Court of Appeals, Division I, did not review this issue because it held for the City. The petition for certiorari brought by the Handys did not address the issue of remittitur. Under Okla.Stat. tit. 12, ch. 15, app. 3, rule 3.15, on petition for certiorari, the case will be decided on the reviewable issues presented on appeal. The issue of remittitur was presented in the appeal.

The City contends that as an employer it has, as a fringe benefit, a comprehensive, group, self-insured health plan. Handy's brief supports the City's contention because it stated the collective bargaining agreement between the City and the police officers provides for a group health insurance program. The City asserts that, because payments for Handy's medical bills were paid from this fund, it is entitled to a credit of those payments.

The principal case relied on is *Overturff v. Hart,* 531 P.2d 1035, 1038 (Okla.1975), in which the Court found that payments made by a defendant to a plaintiff before trial could be used to reduce the judgment if the money came from the defendant's independent fund. Otherwise, the collateral source rule applies—payments made to the injured party from other sources are not credited against the tort-feasor's liability. The City asserts that the insurance fund in this case is similar to the insurance fund used in

*Overturff,* and the medical payments should be used to reduce the judgment.

The parties in *Overturff* were not employer and employee, but a driver and passenger in a car accident. In that case, the insurer was only obligated to pay the damages that the defendant was legally obligated to pay. Therefore, the insurance payments in *Overturff* were not provided as a benefit to an employee but as part of the defendant's liability insurance. In the present case, the insurer's obligation for the medical bills was not contingent on the City's liability.

Section 61 of title 23 provides the measure of damages:

For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this chapter, is the amount which will compensate for all detriment proximately caused thereby, whether it could have been anticipated or not.

In *Denco Bus Lines v. Hargis,* 229 P.2d 560 (Okla.1951), we applied this statute. In so doing we stated:

Upon commission of a tort it is the duty of the wrongdoer to answer for the damages wrought by his wrongful act, and that is measured by the whole loss so caused and the receipt of compensation by the injured party from a collateral source wholly independent of the wrongdoer does not operate to lessen the damages recoverable from the person causing the injury.

*Id.* at 561.

In *Folkestad v. Burlington N. Inc.,* 813 F.2d 1377, 1381 (9th Cir.1987), the court addressed the issue of whether employer's purchased insurance benefits may offset liability and stated that the courts were unanimous that the determining factor was the purpose and nature of the fund, and not merely the source. If the fund is for general hospital and medical coverage upon which the insured may make a claim without regard to liability on the part of the employer, the policy is a fringe benefit, and is part of the employee's income. The collateral source rule prohibits a set-off of

benefits received thereunder by the employee. However, if the fund is viewed as a contribution by the employer to a fund to protect it from liability or an express provision in the collective bargaining states that a set-off is allowed then the benefits may offset the judgment.

In this case, the City admits that the insurance is a fringe benefit and does not state that the collective bargaining allows a set-off. As a fringe benefit, the insurance was a part of Handy's income and cannot be used to offset the judgment. The trial court was correct in denying the motion for remittitur.

The Court of Appeals' opinion is vacated. The judgment of the trial court is affirmed.

CERTIORARI PREVIOUSLY GRANT-ED; COURT OF APPEALS' OPINION VACATED; DISTRICT COURT'S JUDG-MENT AFFIRMED.

LAVENDER, HARGRAVE, ALMA WILSON, KAUGER and SUMMERS, JJ., concur.

OPALA, C.J., concurs in part, dissents in part.

SIMMS, J., dissents.

OPALA, Chief Justice, dissenting in part.

The court holds today that the "collateral source rule"[1] prevents the defendant-City, *qua* plaintiff's employer, from securing credit on a tort recovery judgment for medical expenses paid the plaintiff from its comprehensive self-insurance fund. Insofar as the court (1) treats the credit issue as cognizable on a "motion for remittitur"[2] and (2) announces that payments made pursuant to a *City-maintained* insurance fund are from a collateral source,[3] I recede from the pronouncement as well as from today's judgment. I would hold that *the City's quest for credit was prematurely pressed. Its plea presents neither a trial nor post-trial issue, but one that can be advanced only in an adversary postjudgment proceeding for release and satisfaction pro tanto.*[4] *The judgment should hence be affirmed without prejudice to the credit plea's resolution in a post-remand adversary proceeding.*

I

ANATOMY OF THE LITIGATION

The plaintiff [Handy] was a police officer for the City of Lawton [the City]. He was off duty when another officer's gun discharged and wounded him. He sued the City for bodily injury from the shooting incident. A City fund for reimbursement of employee health expenses paid Handy's doctor as well as his hospital expenses. *The City sought credit for these payments.*

The City initially raised the credit issue when it moved in pretrial stages to admit *evidence* that Handy's medical expenses were paid by the City's insurance fund. The plaintiff opposed the motion; he urged

---

1. Under the collateral source rule, benefits received by the plaintiff from *any source other than the tortfeasor* will not reduce the quantum of recoverable damages. *Porter v. Manes,* Okl., 347 P.2d 210, 212 (1959); *Huey v. Stephens,* Okl., 275 P.2d 254, 257 (1954). *Huey* was overruled on a different point of law in *Hayward v. Ginn,* Okl., 306 P.2d 320, 324 (1957).

2. *"Remittitur"* means judicial reduction of the verdict voluntarily accepted by the plaintiff as an alternative to new trial. *See Wells v. Max T. Morgan Co.,* 205 Okl. 166, 236 P.2d 488, 490 (1951).

3. *Overturff v. Hart,* Okl., 531 P.2d 1035, 1038 (1975). *See* Restatement (Second) of Torts § 920A comment a (1977), which states:
"*Payments by or for defendant.* If a tort defendant makes a payment toward his tort lia-bility, it of course has the effect of *reducing that liability.* This is also true of payments made under an insurance policy that is *maintained by the defendant,* whether made under a liability provision or without regard to lia-bility, *as under a medical payments clause.*" [Emphasis added.]

4. *Hart v. Jett Enterprises, Inc.,* Okl., 744 P.2d 561, 563 (1987) (Opala, J., concurring); *Lambert v. Hill,* 181 Okl. 225, 73 P.2d 124, 126–127 (1937); *Sneary v. Nichols & Shepard Co.,* 70 Okl. 133, 173 P. 366, 368 (1918). For two recent examples of *postconfirmation* credit issue in a mortgage foreclosure setting, *see Willis v. Nowata Land and Cattle Co.,* Okl., 789 P.2d 1282, 1285 (1990) and *Founders Bank and Trust Company v. Upsher,* Okl., 830 P.2d 1355 (1992); *see also* 63 OBJ 1048.

that the insurance payments were from a "collateral source."[5] The court deferred its ruling on the issue. At trial the defendant neither sought admission of the evidence tendered earlier by its motion nor made a voluntary offer of proof.[6]

After a jury verdict for the plaintiff, the City moved for "remittitur,"[7] new trial[8] and for judgment notwithstanding the verdict [JNOV].[9] The City's "remittitur motion"[10] (a) urged that the medical payments for Handy are exempt from the collateral source rule and (b) sought allowance of credit upon the judgment. The court denied all three posttrial motions. On appeal the City urged that the trial court erred by denying its "remittitur motion." The appellate court ruled for the City on other grounds and found no need to reach the credit issue. On certiorari, the issue stands re-presented.[11] Since the court now reinstates the *nisi prius* judgment for the plaintiff, we must reach the credit plea for review.[12]

---

**5.** *See supra* note 1 for the "collateral source rule's" definition.

**6.** An offer of proof is *required* to *preserve* for review a court's error in excluding evidence. *See Braden v. Hendricks,* Okl., 695 P.2d 1343, 1349.(1985). The City did not urge here the pretrial exclusion of the evidence as error. Rather, it resubmitted the credit issue *after trial* and then included its plea's posttrial rejection as one of the errors.

**7.** *See Wells, supra* note 2 for the definition of "remittitur."

**8.** The terms of 12 O.S.1991 § 651 provide in pertinent part:
"A new trial is a *reexamination* in the same court, of an *issue of fact,* or of *law,* either or both, after a verdict by a jury...." [Emphasis mine.]

**9.** The terms of 12 O.S.1991 § 698 provide in pertinent part:
"When a motion for a directed verdict ... should have been granted, the court shall, at the request of the moving party, *render judgment in his favor though a verdict has been found against him....* The request for judgment may be filed *within ten (10) days after the verdict ... is rendered* ... and the motion may be joined with a motion for new trial." [Emphasis mine.]

**10.** A party seeks remittitur by motion for new trial.

**11.** The terms of 12 O.S.1991 Ch. 15, App. 3, Rule 3.15, Rules on Practice and Procedure in the Court of Appeals and on Certiorari to that Court, provide in pertinent part:
"When a petition for writ of certiorari to review a decision of the Court of Appeals is granted, an order shall be entered to that effect. *The case will then be decided on the reviewable issue or issues presented in the briefs theretofore filed....*" [Emphasis mine.]

**12.** The City urged on appeal that it is entitled to credit for the medical benefits extended to Handy. That issue became moot and correctly left unaddressed by the Court of Appeals when the judgment was reversed. We now reinstate the judgment, a conclusion in which I concur. The credit issue is hence properly before us.

An *appellee* may argue errors which result in the judgment's correctness *without counter appealing.* *Woolfolk v. Semrod,* Okl., 351 P.2d 742, 745 (1960); *see also Oklahoma Water Resources Bd. v. Texas County,* Okl., 711 P.2d 38 & n. 48 (1984); *Nilsen v. Tenneco Oil Co.,* Okl., 614 P.2d 36, 39 (1980); *Short v. Guy Nall Trucking Co.,* Okl., 442 P.2d 497, 499 (1968); *Great American Reserve Ins. Co. of Dallas v. Strain,* Okl., 377 P.2d 583, 589 (1963). This is so because the appellee does not deem itself aggrieved by the judgment. Similarly, a party *who does not petition for certiorari* stands in virtually the same position as the *appellee.* That party can preserve for review *without a certiorari petition all the arguments pressed on appeal which demonstrate the correctness of the Court of Appeals' opinion.*

We need ask only two questions: (1) Did the City argue the error on appeal? and (2) Does its argument support reversal of the *nisi prius* adverse ruling? The credit issue meets this test. The City urged the credit issue as an error on appeal. Its argument supports reversal of the *nisi prius* ruling even though it is not the same reason assigned by the Court of Appeals for its decision. *The record and briefs are sufficient to present the City's arguments.*

The following cases, where the aggrieved party *failed to appeal from the claimed error,* are distinguishable from today's case in which *the error was raised on appeal and the victorious party on appeal had to defend against a petition for certiorari: Bane v. Anderson,* Okl., 786 P.2d 1230, 1240 (1990) (Opala, J., concurring in part and dissenting in part); *Price v. Reed,* Okl., 725 P.2d 1254 (1986); *Cleary Petroleum Corp. v. Harrison,* Okl., 621 P.2d 528, 534 (1980); *City of Frederick v. Elmore,* Okl., 587 P.2d 1365, 1370 (1978) (Opala, J. dissenting); *Teel v. Teel,* Okl., 766 P.2d 994, 999 (1988); *Matter of Estate of Bradshaw,* Okl., 606 P.2d 578 (1980); *May v. May,* Okl., 596 P.2d 536, 540 (1979). Also *distinguishable* are those cases in which the court refused to review an issue that *the party who petitioned for certiorari failed to raise,* e.g., *Mitchell v. Ford Motor Credit Co.,* 688 P.2d 42, 44 (1984); *Johnson v. Wade,* Okl., 642 P.2d 255, 258 (1982).

## II

### THE CITY'S CREDIT QUEST FOR PAYMENT OF HANDY'S MEDICAL BILLS PRESENTS A GENUINE *POSTJUDGMENT* CREDIT–ON–JUDGMENT PLEA

Although we measure the meaning and effect of any court-filed paper by its content rather than by the author-provided title,[13] I cannot join in today's consideration of the City's credit quest as part of its "remittitur" plea. *Appellate failure to flag an important procedural flaw invites sloppy legal practice and puts a premium on ambiguity.*[14] A clearer understanding of the City's credit plea emerges when the plaintiff's tort action is divided, as it must be, into trichotomous stages: (a) trial, (b) posttrial but *before* judgment becomes executable[15] and (c) postjudgment.

*Trial* issues deal with the *merits* of a controversy. The word "merits" has a technical meaning. It comprises solely *the real or substantial grounds of claim for relief or defense.* The term does not include practice, procedure and *evidence.*[16] The City's liability and the quantum of Handy's damages raised the issues for trial in the case; the City's quest for credit presented a question *dehors* the *merits*— i.e., a *credit claimed to be due on the amount of adjudged liability.* Injection into trial proceedings of the notion that *the City or its insurance fund* paid Handy's doctor as well as the hospital bills might have been reversible error.[17] *Credit to be given the City for its medical payments to the tort victim clearly is not invocable until both liability and damages have been settled by an executable judgment.*

*Posttrial* issues are those that may be raised in quest of new trial,[18] remittitur,[19] or motion for JNOV.[20] "Remittitur" is *not* to be confused with a plea for credit on a judgment; the former *is an alternative* to new trial and affordable to a plaintiff when the verdict in his favor is judicially declared excessive.[21] The City did not suggest the evidence does not support the amount of the jury's verdict nor call for its reduction; rather, it sought *credit* on a judgment that had not yet passed into *executable stage.*

Oklahoma jurisprudence fashions proper *nisi prius* procedure for consideration of *postjudgment* credit allowance.[22] *A ruling on a quest for medical payments' credit neither alters the terms of the verdict nor modifies the quantum of one's*

13. *Willis, supra* note 4 at 1285 n. 9.

14. *Bane, supra* note 12 at 1239 (Opala, J. concurring in part and dissenting in part). We do the Bar no favor by rescuing its practitioners from the consequences of their sloppy practice without providing an explanation of why they have gone astray.

15. A judgment becomes executable when the motion for new trial is denied. *See* Rule 1.13(A), Rules of Appellate Procedure in Civil Cases, which provides in pertinent part:
 "The effectiveness of a judgment ... *shall stand suspended* if a timely new trial motion ... is filed, and the enforcement of such judgment shall be stayed until ten days *after* the trial court's disposition of the motion...."

16. *Roark v. Shelter Mut. Ins. Co.,* Okl., 731 P.2d 389, 390 n. 2 (1987) (Opala, J. concurring); *Tidmore v. Fullman,* Okl., 646 P.2d 1278, 1283 (1982) (Opala, J., dissenting); *Flick v. Crouch,* Okl., 434 P.2d 256, 261 (1967). *But cf. Kimery v. Public Service Company of Oklahoma,* Okl., 562 P.2d 858 (1977).

17. The terms of 12 O.S.1991 § 2409 are:

"*Evidence* of *furnishing,* offering or promising to pay *medical, hospital or similar expenses* occasioned by an injury is *not admissible* to prove liability for the injury.
The terms of 12 O.S.1991 § 2411 provide in pertinent part:
"*Evidence* of the existence of *liability insurance* is *not* admissible upon the issue of negligence or wrongful action...." [Emphasis mine.]
*See Tidmore, supra* note 16 at 1281.

18. *See supra* note 8 for the terms of 12 O.S.1991 § 651, which define "new trial."

19. *See Wells, supra* note 2 at 490, for the definition of "remittitur."

20. *See supra* note 9 for the terms of 12 O.S.1991 § 698, which explain JNOV procedure.

21. *See Wells, supra* note 2 at 490, for the definition of "remittitur."

22. *See Hart, supra* note 4 at 563 (Opala, J., concurring); *Lambert, supra* note 4 at 126–127; *Sneary, supra* note 4 at 368. *See also Willis, supra* note 4 at 1285 and *Upsher, supra* note 4.

*judgment. It merely defines the quantum that is the creditor's due upon the adjudicated obligation.*[23] I would treat the City's "remittitur motion" as a *premature* attempt to secure credit *pro tanto* on an as yet unexecutable recovery. *I would accordingly allow the City to press its plea after this cause's remand.*

### III

### AFTER REMAND THE TRIAL COURT SHOULD CONDUCT AN ADVERSARY EVIDENTIARY HEARING TO SETTLE THE CREDIT-ON-JUDGMENT PLEA

The court assumes that *the contested medical payments* were made with *Handy's* rather than *the City's* money. It views the issue as settled because the parties refer to the City's medical plan as a "fringe benefit" due under the collective bargaining agreement. I would require the trial court to hold an adversary evidentiary hearing and *then* rule on whether the medical payments in contest are Handy's own money or will qualify for credit on the judgment. This procedure would *assure*

that the plaintiff does not succeed in securing double recovery *pro tanto.*[24]

The collateral source rule applies, at its maximum, when the tortfeasor claims credit for money paid *by the victim* or *for the victim by a stranger.* In that instance the source of the benefit is truly "collateral," i.e., unconnected to the tortfeasor. This typically occurs when the tortfeasor claims credit for money paid by the *victim's own insurance policy.*[25] Whenever the payor of claimed credit has no connection to the tortfeasor, the collateral source rule interposes itself to prevent the wrongdoer from benefiting from a "windfall."[26]

Extant jurisprudence views as a *collateral source* benefits from every fund to which the victim has *contributed.*[27] For example, a government tortfeasor may not reduce its liability by the victim's Social Security[28] or Medicare[29] benefits. Funds from these programs come from a special pool to which the victim contributes. The payment is thus made from a *"collateral source"*—i.e., from a fund clearly separate from general government revenue. *There is no double recovery if the plaintiff has contributed to, paid for, or is otherwise*

**23.** *See Hart, supra* note 4 at 563 (Opala, J., concurring); *Lambert, supra* note 4 at 126–127; *Sneary, supra* note 4 at 368. *See also Willis, supra* note 4 at 1285 and *Upsher, supra* note 4.

**24.** *"Double recovery"* is the sum that represents *more than the total maximum loss which a party has sustained. Briscoe v. Harper Oil Co.,* Okl., 702 P.2d 33, 40 (1985) (Summers, J. dissenting). *See also Blake v. Delaware and Hudson Railway Company,* 484 F.2d 204, 207 (2d Cir.1973) (Friendly, J. concurring), where Judge Friendly expressed the view that permitting the plaintiff to recover from the railroad the bulk of his hospital bills—previously paid by the railroad—seems a shockingly unjust double recovery. He concluded that the provisions of 45 U.S.C. § 55, *not the common law,* required this result.

**25.** *Richardson v. Shaw,* Okl., 313 P.2d 520, 522 (1957); *Huey, supra* note 1 at 257.

**26.** *Denco Bus Lines v. Hargis,* 204 Okl. 339, 229 P.2d 560 (1951).

**27.** One authority suggests that trial courts should allow a credit against a judgment for *only that percentage of the benefit which is traceable to the tortfeasor. Steckler v. United*

*States,* 549 F.2d 1372, 1379 (10th Cir.1977), applying Colorado law. *Most extant jurisprudence rejects tracing as an undue burden. See Bradshaw v. United States,* 443 F.2d 759, 765 n. 12, 771 (D.C.Cir.1971); *Smith v. United States,* 587 F.2d 1013, 1016 (3rd Cir.1978), applying Pennsylvania law.

**28.** *See e.g., Jennings v. United States,* 291 F.2d 880, 887–888 (4th Cir.1961), applying Maryland law to Civil Service Retirement Act benefits; *United States v. Price,* 288 F.2d 448, 450–451 (4th Cir.1961), applying Virginia law to Civil Service Retirement Act benefits; *United States v. Brooks,* 176 F.2d 482, 485 (4th Cir.1949), applying North Carolina law to National Service Life Insurance benefits. Cf., *Eichel v. New York Central R. Co.,* 375 U.S. 253, 254, 84 S.Ct. 316, 317, 11 L.Ed.2d 307 (1963) (per curiam), where the Supreme Court held that since the Railroad Retirement Act is substantially "social security" for railroad employees, benefits received under that Act are not deductible from a judgment against the employer railroad.

**29.** *See, e.g., Mitchell v. Moore,* 406 So.2d 347, 351 (Ala.1981); *Our Lady of Mercy Hospital v. McIntosh,* 461 S.W.2d 377, 379 (Ky.App.1970).

entitled to the benefit which is the source of received payments.

By contrast, payments made under an *insurance policy* are *not* a collateral source *if the insurance was purchased or maintained by the defendant.* This test is applicable whether payment is in the form of liability indemnity or *under a medical payments clause.*[30]

*The court rejects today these common-law norms and instead adopts the teaching of Folkestad v. Burlington Northern, Inc.,*[31] *a case governed by federal statutory law.*[32] I cannot accede to today's espousal of federal legislation that contravenes our own common-law norms under which indemnity from insurance *maintained by the defendant* reduces his liability. *Folkestad itself suggests that, were that case not governed by Section 5 of the Federal Employers Liability Act [FELA],*[33] *the common-law principle would allow credit to the judgment debtor, once it was shown that premiums for the insurance were paid by the employer.*[34]

Employee health insurance, against which claims may be made without regard to the employer's tort liability, is not *per se* part of the employee's income. When an employer *gratuitously* provides health insurance to its employee, the latter's labor has *not* purchased the coverage; the employer could discontinue the benefit at will. On the other hand, health insurance coverage conferred by *individual contract* or *collective bargaining agreement* is con-sidered a *"fringe benefit" in lieu of wages.* The legal norm espoused today *bars* credit to the tortfeasor for benefits received from *an employer's fund for general hospital and medical coverage if the employee could have made a claim without regard to the employer's tort liability.* This test appears to make *no* distinction between *gratuitous* (non-contributory) health benefits and those that result from a *contractual obligation.* The court has thus crafted a rule *which treats every employer's health insurance indemnity as a collateral source. I must recede from the pronouncement's overbroad parameters.*

## SUMMARY

The court holds today that medical payments from a self-administered health plan—*paid exclusively by the employer*—are within the employee's collateral source shield. *Neither the text of the self-insurance plan in question nor that of the collective bargaining agreement—both vaguely referenced by the parties' briefs—is part of the record before us.* Both litigants would benefit from an orderly adversary hearing for a full-scale determination of the claimed credit.

The court must not abdicate its duty to guard against a tort plaintiff's *double recovery.* The proper practice for resolution of this credit quest is to *affirm the judgment without prejudice to post-remand redetermination of the defendant's plea for a pro tanto satisfaction of judgment.* If indeed it is shown that Handy had con-

**30.** Overturff, supra note 3 at 1038; Restatement (Second) of Torts § 920A *supra* note 3 at comment a.

**31.** 813 F.2d 1377, 1381 (9th Cir.1987).

**32.** Section 5 of the Federal Employers Liability Act (Railroads) [FELA], 45 U.S.C. § 55, which provides in pertinent part:

"Any *contract, rule,* regulation, or device whatsoever, the purpose or intent of which shall be to *enable any common carrier to exempt itself from any liability* created by this act [45 U.S.C. §§ 51 *et seq.*], shall to that extent be void: *Provided,* That in any action brought against any such common carrier under or by virtue of any of the provisions of this act [45 U.S.C. §§ 51 *et seq.*], such com-835 P.2d—21

mon carrier may set off therein *any sum it has contributed or paid to any insurance,* relief benefit, or indemnity that may have been paid to the injured employee or the person entitled thereto on account of the injury or death for which said action was brought." [Emphasis mine.]

The *Folkestad* view was that an allowance of credit for the employee's medical expenses would permit avoidance of FELA liability, a result prohibited by Section 5. The solution fashioned in *Folkestad* was designed to meet the Section 5 strictures. *See Folkestad, supra* note 31 at 1381.

**33.** FELA, 45 U.S.C. § 55, *supra* note 32.

**34.** *Folkestad, supra* note 31 at 1380–1381.

tributed to the premiums paid, either directly or indirectly, then *nisi prius* refusal to credit the City for the medical payments would *not* offend against the law's prohibition of double recovery.[35]

The result I counsel here, harsh though it may appear because it would prolong the contest, traces with fidelity the beaten path of long-established precedent. *Fundamental fairness in litigation process cannot be afforded except within a framework of orderly procedure.* No area of the law may lay claim to short-cut or exemption from the range of its basic strictures—not even the postjudgment process for partial release and satisfaction. Chaos, caprice and *ad hoc* pronouncements would inevitably follow the slightest departure.

" * * * *It is procedure that spells much of the difference between rule by law and rule by whim or caprice.* Steadfast adherence to strict procedural safeguards is our main assurance that there will be equal justice under law. * * * "[36] [Emphasis mine.]

In short, I would not allow the premature *nisi prius* ruling on the credit issue to bar a proper postremand inquiry into the status of the medical benefits in question under the collateral source rule. In my view, *the City's plea is properly to be entertained in post-affirmance proceedings.* I would, as the court does today, affirm the plaintiff's judgment, but would *remand this cause without prejudice to the credit plea's resolution in a post-remand adversary proceeding to secure release and satisfaction pro tanto.*[37]

---

**35.** *See supra* note 24 for the definition of "double recovery."

**36.** *Joint Anti–Fascist Refugee Committee v. McGrath,* 341 U.S. 123, 179, 71 S.Ct. 624, 652, 95 L.Ed. 817 (1951) (Douglas, J., concurring).

