Ramon L. KING, Appellee,

v.

Richard Lee FINNELL, Appellant.

No. 50638.

Supreme Court of Oklahoma.

Nov. 20, 1979.

Deryl L. Gotcher, Jones, Givens, Brett, Gotcher, Doyle & Bogan, Inc., Tulsa, for appellee.

Arthur G. Price, Leslie S. Hauger, Jr., Hauger, Price & Northrop, Tulsa, for appellant.

BARNES, Justice:

. This case involves an action on a promissory note brought by Appellee, Ramon L. King, who alleged that he was the assignee of a note given to the City Bank and Trust Company of Tulsa, Oklahoma, by Ms. Dixie Neely, doing business as Dixie's Bar-B-Q.

At the time Ms. Neely executed the note, the Bank, requiring additional security, obtained a separate written guarantee agreement from Mr. King. As time progressed, and Ms. Neely began to experience difficulty in making timely payments on the note, she arranged to have her former husband, Richard Lee Finnell, lend his name to the note by signing it. At the time Mr. Finnell signed the note, Mr. King was present.

Shortly after Mr. Finnell had signed the note, Mr. King, acting under his guarantee agreement, paid the note, and the note was then assigned to him. Mr. King then commenced the suit involved in this appeal.

Alleging that he had become the assignee of the note, Mr. King brought an action against Ms. Neely, maker of the note, and Mr. Finnell, who was alleged to be an accommodation maker or indorser of the note. Mr. Finnell filed an answer and cross-petition, denying liability on the note, and, by way of alternative plea, sought a determination that if he was liable on the note he was only secondarily liable and should have a judgment against the plaintiff as first guarantor.

After depositions and exhibits were filed with the court, both Mr. King and Mr. Finnell filed for summary judgments. On October 26, 1976, the trial court sustained the plaintiff's motion for summary judgment. The appearance docket recited:

"10/26/76 Mo. Sumry. Judgt. sust. on behalf of Pltf. as per ord."

The plaintiff's attorney prepared the order sustaining the motion for summary judgment. That order was signed by the Trial Judge and filed on October 28, 1976, two days after the motion was granted. That order read in part:

". . . That the plaintiff's Motion for Summary Judgment be and the same is hereby sustained and Plaintiff is granted judgment against the defendant, Richard Lee Finnell, to which the defendant excepts and exception allowed."

Almost two months later, on December 20th of the same year, Mr. King filed a Motion to Settle the Journal Entry. Attached to that motion was a proposed Journal Entry purporting to grant a money judgment against the defendant, Richard Lee Finnell. After consideration of that motion, the trial court entered a new Jour-

nal Entry on January 25, 1977, granting a money judgment against the defendant for $30,878.44, together with interest and attorneys' fee of $3,500.00.

Mr. Finnell appealed from that January 25, 1977 Journal Entry, arguing in part that, since more than thirty days had passed since the entry of the first Journal Entry, the time to appeal from the entry had passed and the trial court was without jurisdiction to enter a new order in the case, since the first Journal Entry had become a final order.

The case was assigned to the Court of Appeals, Division No. 1, and that court issued an opinion holding that the trial court's second Journal Entry was null and void, as the first Journal Entry had become a final order. The Court of Appeals also entered an award of $2,500.00 for attorneys' fee in favor of Mr. Finnell and against Mr. King.

Mr. King has petitioned this Court to grant certiorari. Finding that the opinion of the Court of Appeals is inconsistent with prior opinions of this Court and with the Rules of Appellate Procedure in Civil Cases, we vacate the opinion of the Court of Appeals, and grant certiorari.

## I.

Rule 1.11(b) of the Rules of Appellate Procedure in Civil Cases,[1] provides:

"(b) *Computation of judgment date and definition of final order.*

"In law cases tried to a jury, judgment is deemed rendered when the verdict is returned and accepted by the court without reservation. 12 O.S.1961 § 696. If judgment on jury verdict is reversed or *if the case is tried to the court, judgment is deemed rendered when its terms are completely pronounced by the judge and clearly resolve all issues in controversy.* * * *" [Emphasis added]

In the case before us, the order of October 28, 1976, did not resolve *all the issues in the controversy* before the Court. The only issue resolved by the order was the issue of liability. No pronouncement was made with respect to damages or attorneys' fees. Therefore, the order did not constitute a final judgment, as that term is defined in Rule 1.11(b), quoted above. Accordingly, the Court of Appeals' ruling that the October 28th order constituted a final judgment was contra to that Rule and case law interpreting that Rule.[2] This being the case, the Court of Appeals' analysis and disposition of the case was in error.

As the case cannot be disposed of on a procedural basis, the merits of the case must be addressed.

## II.

The first question to be answered is, in what capacity Mr. Finnell lent his name to the note. Mr. King argues that Mr. Finnell is an accommodation maker, and therefore not a mere guarantor. We cannot agree with that analysis.

Mr. Finnell's signature on the instrument does not contain any written indication of the capacity in which he signed the instrument. He merely signed the back of the instrument in blank.

As Mr. Finnell's signature did not indicate the capacity in which he signed the instrument, the provisions of 12A O.S.1971, § 3–402, apply. That Section provides that:

"Unless the instrument clearly indicates that a signature is made in some other capacity it is an indorsement."

Thus, Mr. Finnell was an indorser and not a maker of the instrument.

We next determine in what capacity Mr. Finnell indorsed the note. Under the provisions of 12A O.S.1971, § 3–415(4),[3] an indorsement *not in the chain of title* is an

---

1. The Rules of Appellate Procedure in Civil Cases are found at Title 12, Okla.Statutes, Ch. 15, App. 2.

2. See also, e. g., *Bobo v. Bigbee*, Okl., 548 P.2d 224 (1976).

3. All such numbers referred to in this opinion, unless otherwise noted, are from Title 12A, O.S.1971.

*accommodation* indorsement. That Section provides:

"An indorsement which shows that it is not in the chain of title is notice of its accommodation character."

█ In the case before us, Mr. Finnell's indorsement was clearly *not* in the chain of title. The note was given to the Bank by Ms. Neely, and then the Bank negotiated the instrument by transferring it to Mr. King. At the time Mr. King took the instrument, it contained Mr. Finnell's indorsement. Thus, as the note was clearly one given to the Bank, and being transferred by the Bank and not by the indorser of the instrument, the indorsement was not in the chain of title. Under the provisions of Section 3–415(4), quoted above, the indorsement thus had the effect of making Mr. Finnell an *accommodation indorser.*

For the above stated reasons, we hold, first, that Mr. Finnell was an indorser, and not a maker, and, secondly, that he was an accommodation indorser.

### III.

Having held that Mr. Finnell was an accommodation indorser, we next determine what rights and obligations flow from that status. Section 3–415(2) of the Uniform Commercial Code provides:

"When the instrument has been taken for value before it is due the *accommodation party is liable in the capacity in which he has signed even though the taker knows of the accommodation.*" [Emphasis added]

Subsection (5) of Section 3–415 provides that:

"An accommodation party is not liable to the party accommodated, and if he pays the instrument has a right of recourse on the instrument against such party."

█ Under both the Uniform Commercial Code and pre-code Oklahoma law,[4] an accommodation party is a surety.

Uniform Commercial Code Comment 1 to Section 3–415 provides in part:

"1. *Subsection (1) recognizes that an accommodation party is always a surety (which includes a guarantor),* and it is his only distinguishing feature. He differs from other sureties only in that his liability is on the instrument and he is a surety for another party to it. His obligation is therefore determined by the capacity in which he signs. An accommodation maker or acceptor is bound on the instrument without any resort to his principal, *while an accommodation indorser may be liable only after presentment, notice of dishonor and protest.* The subsection recognizes the defenses of a surety in accordance with the provisions subjecting one not a holder in due course to all simple contract defenses, as well as his rights against his principal after payment. * * *" [Emphasis added]

In the case before us, Mr. King and Mr. Finnell were both sureties and may possibly be co-sureties, as they were both bound for the same debt of a principal.[5]

█ If the parties are co-sureties, the right of contribution which exists between them would only entitle a co-surety to collect his pro rata share of a debt paid, and not the entire amount.[6]

---

4. For pre-code cases, holding that an accommodation party is a surety, see *Yaffee v. Bank of Chelsea,* Okl., 271 P.2d 365 (1954), and *Van Antwerp v. Schultz,* 203 Okl. 84, 217 P.2d 1034 (1950).

5. See Simpson's Handbook of the Law of Suretyship, § 13 (West Publishing Company 1977).

6. Section 1–103 of 12A O.S.1971 provides that unless displaced by the particular provisions of this Act, the principles of law and equity, including the law merchant and the law relative

to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions.

In arguing that Mr. King and Mr. Finnell were not co-sureties, Mr. King relies upon 38 Am.Jur.2d, Guarantee, § 127, for the proposition that if a principal obligation is signed by an accommodation indorser or by a surety, as well as the principal, a guarantor is not deemed a co-surety of such person. The principal case

Whether or not Mr. King and Mr. Finnell are in fact co-sureties, or sub-sureties, is not clear, as the so-called guarantee agreement signed by Mr. King was not introduced. This being the case, we can hardly say that the granting of summary judgment was appropriate, as there is no definite proof that Mr. King was a guarantor. If the document signed by Mr. King does not in fact obligate him to pay upon Ms. Neely's default, he may be nothing more than a volunteer, in which case he would be entitled to no reimbursement contribution at all. Additionally, it is important to determine whether Mr. King, as guarantor, was a payment or collection guarantor. Parol evidence may be admissible to show the intent of the parties. See *Jorski Mills and Elevator Co. v. Farmers Elevator Mutual Insurance Co.*, 404 F.2d 143 (10th Cir. 1968).

For these reasons, we must reverse the summary judgment granted by the trial court and remand the case for a trial on the merits.

CERTIORARI GRANTED, OPINION OF THE COURT OF APPEALS VACATED, AND THE JUDGMENT OF THE TRIAL COURT REVERSED, AND THE CASE REMANDED.

LAVENDER, C. J., IRWIN, V. C. J., and WILLIAMS, HARGRAVE and OPALA, JJ., concur.

relied upon by the compilers of American Jurisprudence 2d, in support of that proposition, is *Noble v. Beeman-Spaulding-Woodward Co.*, 65 Or. 93, 131 P. 1006 (1913). That case simply does not support the proposition stated. In that case, the guarantor would not sign as a guarantor until such time as several corporate officers had signed the instrument as makers.

Once those signatures were obtained, the guarantor in that case signed as a payment guarantor. Under the negotiable instrument laws in Oregon at that time, payment guarantors were not accommodation parties, and thus the liability of the accommodation makers and the payment guarantor were successive and not current.