2001 OK 93

**Bobby Gene ALLEN and Jane D. Allen, individually and as parents and natural Guardians of Brett Allen, a minor, and Parents and surviving next-of-kin of Damon Allen, Plaintiffs/Appellees,**

v.

**LYNN HICKEY DODGE, INC., Defendant/Appellant,**

and

**Allstate Insurance Company, Defendant/Appellee.**

No. 95,206.

Supreme Court of Oklahoma.

Nov. 6, 2001.

As Corrected Nov. 7, 2001.

As Modified Nov. 27, 2001.

As Amended on Denial of Rehearing Denied Dec. 10, 2001.

Ed Abel, Lynn B. Mares, Abel, Musser, Sokolosky, Mares, Burch, Kouri & George, Oklahoma City, Oklahoma, attorneys for Appellees Bobby Gene Allen and Jane D. Allen, individually, and as parents and natural guardians of Brett Allen, a minor, and as parents and surviving next-of-kin of Damon Allen.

Curtis L. Smith, John Dexter Marble, Chubbuck Smith Rhodes Stewart & Elder, Oklahoma City, Oklahoma, attorneys for Appellant Lynn Hickey Dodge, Inc.

Gerald E. Durbin, II, David B. Donchin, Durbin, Larimore & Bialick, Oklahoma City, Oklahoma, attorneys for Appellee Allstate Insurance Company.

Paul B. Middleton, Dobbs, Schroeder & Middleton, Oklahoma City, Oklahoma, attorney for Peggy Chisholm, Administratrix of the Estate of Margaret June Green.

WINCHESTER, J.

¶ 1 This matter concerns an action arising from an automobile accident that occurred when a vehicle driven by Margaret June Green collided with a vehicle driven by plaintiff/appellee Bobby Allen on June 17, 1995. There were three passengers in the Allen vehicle, Jane, Brett and Damon Allen. The record reflects that Damon Allen died from injuries incurred in the accident and that Jane, Brett and Bobby Allen apparently were injured. Margaret June Green drove a 1986 Buick off the car lot owned by defendant/appellant Lynn Hickey Dodge, and struck the rear of the Allen vehicle while said vehicle was stopped at a red light located several blocks from the Lynn Hickey dealership. The issue before the Court concerns ownership of the 1986 Buick driven by Ms. Green at the time of the accident.

## FACTS AND PROCEDURAL HISTORY

¶ 2 On June 17, 1995, a Saturday, Ms. Green signed a Sales Order and Temporary Agreement given her by an employee of Lynn Hickey Dodge, and in return tendered the amount of one thousand five hundred dollars ($1,500.00) to Lynn Hickey Dodge and drove away in a 1986 Buick. Ms. Green signed a retail sales installment contract on the 1986 Buick on July 3, 1995. Appellees filed the instant lawsuit, alleging Lynn Hickey Dodge negligently entrusted the vehicle to Ms. Green. Appellees also sued Lynn Hickey Dodge as Ms. Green's principal. The trial court granted summary judgment in favor of Lynn Hickey Dodge on these issues, and the Court of Civil Appeals, Division I, reversed and remanded the case, cause number 95,173, for proceedings on the theory of negligent sale of a vehicle.

¶ 3 Defendant/appellee Allstate Insurance Company, underinsured motorist carrier for the Allens, filed a motion for partial summary judgment on July 9, 1998, in which the Allens joined, asserting Lynn Hickey Dodge owned the 1986 Buick at the time of the accident. The trial court granted this motion and held as a matter of law that Lynn Hickey Dodge was the owner of this vehicle at the time of the accident. On appeal, the Court of Civil Appeals, Division I, reversed and held that title to the Buick passed to Ms. Green upon delivery of the vehicle, to-wit, when she drove it off Lynn Hickey's car lot.

¶ 4 Upon *de novo* review, we hold partial summary judgment on the issue of ownership is inappropriate. Disputed issues of material fact exist due to ambiguous and conflicting language used in the sales agreement and in the temporary loan agreement, both of which were executed on June 17, 1995, by an employee of Lynn Hickey Dodge and Ms. Green.

## REVIEW OF SUMMARY PROCEEDINGS

¶ 5 Summary judgment is appropriate where it appears there is no substantial controversy as to any material fact and one party is entitled to judgment as a matter of law. *Daugherty v. Farmers Coop. Ass'n*, 1984 OK 72, ¶ 5, 689 P.2d 947, 949; *Crockett v. McKenzie*, 1994 OK 3, ¶ 3, 867 P.2d 463, 464. "[T]he inquiry on appeal concerning the propriety of the entry of summary judgment is limited to potential controversies concerning any issue raised by the pleadings." *Wabaunsee v. Harris*, 1980 OK 52, ¶ 9, 610 P.2d 782, 785. Our ruling must be made on the record that the parties actually presented and not on a record that is potentially possible. *Weeks v. Wedgewood Village, Inc.*, 1976 OK 72, ¶ 12, 554 P.2d 780, 784. An order that grants summary relief disposes of legal issues. Therefore, on appeal, the review we conduct is *de novo*. *Brown v. Nicholson*, 1997 OK 32, ¶ 5 n. 1, 935 P.2d 319, 321 n. 1; *Manley v. Brown*, 1999 OK 79, ¶ 22, n. 30, 989 P.2d 448, 456 n. 30. "An appellate court claims for itself plenary, independent and non-deferential authority to re-examine a trial court's legal rulings." *Manley*, 1999 OK 79, ¶ 22, n. 30, 989 P.2d at 456, n. 30.

¶ 6 The sole issue we address on certiorari is whether disputed facts exist in the determination of the ownership of the 1986 Buick Ms. Green drove at the time of the

accident. The parties cite 12A O.S.1991, 2–401 [1] from Oklahoma's Uniform Commercial Code, in support of their arguments that one or the other actually owned the vehicle at the time of the accident. Lynn Hickey Dodge argues that under § 2–401(2), title passed to Ms. Green at the time she drove the vehicle off Lynn Hickey Dodge's care lot and the dealership had only a security interest in the vehicle. Allstate contends that when Ms. Green signed the temporary loan agreement, under § 2–401(1) the parties "explicitly agreed" that Lynn Hickey Dodge would retain title to the vehicle and that title would pass to Ms. Green only if and when she secured financing.

¶ 7 The two documents, when read together, contain ambiguous and conflicting language that precludes summary disposition on the issue of the 1986 Buick's ownership at the time of the accident. The temporary loan agreement states that "Vehicle is Lender's property. This Agreement is a contract for use of Vehicle while Vehicle is on rental to Borrower." *See* temporary loan agreement, page two, Section I. However, Ms. Green and Lynn Hickey Dodge's employee left substantial provisions of this document blank, including but not limited to the following: whether Ms. Green was a prospective buyer or a service customer; the identity of the person who released the car and the date and time of release; odometer readings; miles allowed; chargeable miles; rental rates; vehicle condition; the "rental will be paid by" provision and the consideration clause. The temporary loan agreement lists the subject vehicle to be the 1986 Buick Century, sticker number G6458764, driven by Ms. Green at the time of the accident.

¶ 8 The Lynn Hickey Dodge sales order document is completed in its entirety. It reflects on page one thereto, a sales price of four thousand nine hundred fifty dollars ($4,950.00), plus a processing fee of thirty-eight dollars and fifty cents ($38.50) as well as Lynn Hickey Dodge's receipt of Ms. Green's one thousand five hundred dollar ($1,500.00) down payment. It lists on page one a finance balance on the vehicle of three thousand four hundred eighty-eight dollars and fifty cents ($3,488.50). The sales order also lists the "vehicle being sold" as the 1986 Buick Century, sticker number G6450764 and contains the vehicle identification number on page one. This is the same vehicle referenced in the temporary loan agreement and the vehicle driven by Ms. Green at the time of the accident. In addition, the sales agreement states on page one "THIS

---

1. 12A O.S.1991, 2–401. Passing of Title; Reservation for Security; Limited Application of this Section

Each provision of this Article with regard to the rights, obligations and remedies of the seller, the buyer, purchasers or other third parties applies irrespective of title to the goods except where the provision refers to such title. Insofar as situations are not covered by the other provisions of this Article and matters concerning title become material the following rules apply:

(1) Title to goods cannot pass under a contract for sale prior to their identification to the contract (Section 2–501), and unless otherwise explicitly agreed the buyer acquires by their identification a special property as limited by this act. Any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest. Subject to these provisions and to the provisions of the article on Secured Transactions (Article 9), title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties.

(2) Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place; and in particular and despite any reservation of a security interest by the bill of lading

(a) if the contract requires or authorizes the seller to send the goods to the buyer but does not require him to deliver them at destination, title passes to the buyer at the time and place of shipment; but

(b) if the contract requires delivery at destination, title passes on tender there.

(3) Unless otherwise explicitly agreed where delivery is to be made without moving the goods,

(a) if the seller is to deliver a document of title, title passes at the time when and the place where he delivers such documents; or

(b) if the goods are at the time of contracting already identified and no documents are to be delivered, title passes at the time and place of contracting.

(4) A rejection or other refusal by the buyer to receive or retain the goods, whether or not justified, or a justified revocation of acceptance revests title to the goods in the seller. Such revesting occurs by operation of law and is not a "sale".

AGREEMENT ON THIS PURCHASE IS UNDERSTOOD THAT THE CUSTOMER IS RESPONSIBLE FOR BUYING THEIR OWN TAG, TITLE AND TAX." It contains a limited warranty clause on page two and certain definitions of terms including but not limited to "Seller," "Purchaser" and "Manufacturer" in Section (1) on page two. Both the temporary loan agreement and the sales order contain handwritten references to a Farmers Insurance Group policy, number 08138816916.

¶ 9 We hold that the terms of the temporary loan agreement and the sales order are ambiguous and conflicting. Indeed, when these two documents are read together, issues of material fact regarding the ownership of the 1986 Buick at the time of the accident arise. Therefore, none of the litigants is entitled to judgment as a matter of law on the issue of the 1986 Buick's ownership.

**CERTIORARI PREVIOUSLY GRANTED;COURT OF CIVIL APPEALS OPINION VACATED; ORDER OF THE TRIAL COURT REVERSED AND CASE REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.**

¶ 10 HARGRAVE, C.J., WATT, V.C.J., HODGES, LAVENDER, KAUGER, BOUDREAU, JJ., concur.

¶ 11 OPALA, J., concur.

¶ 12 SUMMERS, J., dissents.

OPALA, J., concurring.

¶ 1 The court *vacates* today the Court of Civil Appeals' opinion, *reverses* that part of the trial court's judgment which *summarily declares* [1] that Lynn Hickey Dodge, Inc.

[Lynn Hickey] was the owner of the vehicle at the time of the accident, and *remands* the cause for further proceedings. According to the court's opinion, whether Lynn Hickey was the owner presents a fact question for the jury. While I concur in the court's pronouncement, I write separately to provide my own analysis of the issues tendered by this appeal.

## I

### THE ANATOMY OF LITIGATION

¶ 2 On 17 June 1995 Margaret June Green [Green or driver] rear-ended the Allens' car, killing one child and injuring the other three occupants.[2] Green had earlier that day obtained the car in question from Lynn Hickey's auto dealership. The Allens brought four lawsuits stemming from the accident— one of which was voluntarily dismissed and the other three were consolidated below for disposition.[3] Among the defendants sued were Lynn Hickey and the Allens' own uninsured motorist carrier, Allstate Insurance Company [Allstate]. Against Lynn Hickey the Allens advanced three theories of liability—(1) agency, (2) negligent entrustment and (3) negligent sale. On *3 September 1998* the district court *summarily determined* that Lynn Hickey was the owner of the vehicle at the time of the accident. Lynn Hickey later challenged the negligent entrustment and agency theories by its motion for summary relief. The trial court ruled in favor of Lynn Hickey by order entered *31 March 2000.* Some five months later a bench trial settled the remaining issues in the case. Judgment

---

1. *Summary process* is a procedural pretrial device for the prompt and efficient disposition of an action *sans* forensic combat where there is no dispute about the material facts or about the inferences to be drawn from undisputed facts, and the law favors either the movant's claim or its liability-defeating defense. *Manley v. Brown,* 1999 OK 79, ¶ 22, 989 P.2d 448, 455–56.

2. Damon Allen was killed in the accident and his parents, Bobby Gene and Jane D. Allen, and brother, Brett Allen, were injured.

3. The Allens brought four lawsuits against Toyota Motor Sales, U.S.A., Inc., Lynn Hickey Dodge,

Inc., Peggy Chisholm, administratrix of the estate of Margaret June Green (deceased) and Allstate Insurance Company, filed under case numbers CJ–96–6075, 96–6076, 96–6078, 96–6079. The first case (CJ–96–6075) was dismissed 31 October 1996 without prejudice to refiling. The remaining three cases were consolidated 27 November 1996 under CJ–96–6076. The Allens later dismissed two of the parties *Toyota* on 12 August 1999 without prejudice to refiling and *Allstate* on 16 June 2000 with prejudice to refiling. *Allstate* brought a cross-claim against the other defendants.

for the Allens was entered on *14 August 2000.*

### Two Separate Appeals Were Brought From the August 14 Judgment

¶3 The Allens brought the *first appeal* from the August 14 judgment. *They sought review of the adverse ruling on their negligent entrustment and agency theories [Allen I].*[4] *One week later Lynn Hickey brought a separate appeal from the same judgment [Allen II].*[5] The latter targeted for review the nisi prius *ownership ruling.* Because all the tendered matters were *initially determined* by summary process the parties prosecuted their appeals by the accelerated track.[6] Though brought from the same judgment, these appeals were *never* consolidated in the appellate courts for disposition by a single opinion, either *sua sponte* or on the parties' motion.[7] COCA handed down on the *same day* two separate opinions, one in each appeal.

### Allen II Stands Disposed of by Today's Pronouncement On Certiorari

¶4 In *Allen II* COCA *reversed* that part of the nisi prius judgment which determined Lynn Hickey to be the owner of the vehicle at the time of the accident. According to COCA, *the record shows as a matter of law* that ownership passed to Green when Lynn Hickey delivered the vehicle to her. Review by certiorari was granted on the Allens' and Allstate's petitions.[8]

### Allen I Mandate Issued When No One sought Review by Certiorari

¶5 Relying solely on its *Allen II* pronouncement, COCA remanded the cause in *Allen I* to the district court for a determination of liability on the tendered but unresolved—at nisi prius—negligent sale theory. Its *Allen I* pronouncement *left undisturbed* the trial court's ruling on the theories of negligent entrustment and agency.[9] *Because none of the parties sought certiorari in Allen I, mandate was issued.*[10]

¶6 On its certiorari review of the ownership dispute's record in *Allen II,* the court today: (a) *pronounces* that whether Lynn Hickey was the car's owner at the time of the accident presents a fact issue, (b) *vacates* COCA's opinion, (c) *reverses* that part of the trial court's judgment which decides Lynn Hickey's ownership as a matter of law and (d) *remands* the cause for further proceedings *solely* on the car ownership fact issue.

---

4. *Allen I* is styled on the docket of this court as *Allen v. Toyota Motor Sales, U.S.A., Inc., et seq.,* No. 95,173. The Allens' appeal was brought 30 August 2000.

5. *Allen II* is styled on the docket of this court as *Allen v. Lynn Hickey Dodge, Inc.,* No. 95,206. Lynn Hickey's appeal was brought 7 September 2000.

6. For the accelerated-track procedure, see Rule 1.36, Oklahoma Supreme Court Rules, 12 O.S.Supp.1997, Ch. 15, App. 1, *infra* note 25.

7. The pertinent provisions of Rule 1.27(d), Oklahoma Supreme Court Rules, 12 O.S.Supp.1997, Ch. 15, App. 1, are:

(d) Consolidated and Companion Appeals.
* * *
The appellate court has the discretion *sua sponte,* or upon motion of a party, to consider any appeals including one or more appeals governed by Rule 1.36 as companion or consolidated appeals.

8. On certiorari the parties were directed to brief whether *Allen II* was dismissible on the following theories: (1)[a] the court's pronouncement in *Allen I* constitutes the settled law of the case and [b] there are no reasons for recalling the mandate in *Allen I;* (2) Lynn Hickey (the appellant herein) is not an "aggrieved party" with standing to prosecute an appeal from a judgment that finds it to be the owner of the vehicle *but exonerates* it of liability on the theories of agency or negligent entrustment of a vehicle; (3) the prejudgment ruling that declared Lynn Hickey the owner of the vehicle merged into the "final" judgment (entered 14 August 2000) and Lynn Hickey should have either *prosecuted* a counterappeal in *Allen I* or interposed in that judgment's defense an argument that although the ownership finding was in error the result was nonetheless correct; and (4) a single judgment that affords the appellant one right to seek corrective relief cannot be split into multiple proceedings for appellate review.

9. *See* my views on the "settled law of the case" in Part III *infra.*

10. Mandate issued in *Allen I* 1 December 2000.

## II

## THE MOTION TO RECALL MANDATE IN *ALLEN I* CANNOT BE SUSTAINED

¶ 7 While *Allen II* was pending on certiorari before this court, the Allens—prompted no doubt by this court's mid-certiorari inquiry [11]—moved to recall the *Allen I* mandate,[12] which had issued 1 December 2000 when no one sought certiorari. According to their argument for recall, COCA (a) *wrongly failed to consolidate* the appeals in *Allen I* and *Allen II*, (b) *mistakenly issued* two decisions and (c) *erroneously relied on* findings in *Allen II* for its pronouncement in *Allen I*. According to the Allens, because the court's *Allen I* mandate was transmitted before the disposition of all issues advanced in both appeals, it should now be recalled so that the issues that remain may still be addressed in a single opinion.

¶ 8 Mandate is a communication of an appellate tribunal to a lower court whence the case came.[13] Ordinarily mandate will not be recalled unless it was issued through inadvertence or mistake or when it appears that failure to recall it will cause unavoidable casualty.[14] A mandate transmitted in violation of this court's rules will be deemed to have been issued through inadvertence or

mistake. Mandate may be recalled either on application or *sua sponte*.[15]

¶ 9 Because *Allen I must now stand* as settled law of the case on the *there-tendered* (but *unreviewed*) nisi prius ruling on the theories of agency and negligent entrustment (which will be further explained in Part III *infra*) and no certiorari was ever sought in that case, there is here no tenable legal ground for recalling mandate.[16] My response *might have been different if recall relief had been requested—before mandate's issuance—by a reasoned plea to defer* the mandate's transmission pending this court's final disposition of *Allen II*. A litigant's pure and transparent afterthought will seldom offer a *reasoned ground*, even though it still makes good sense for this court never to issue more than a single mandate in multiple appeals for review of one judgment.[17]

## III

## THE SETTLED LAW OF THE CASE IN *ALLEN I* BARS ON REMAND RELITIGATION OF LYNN HICKEY'S LIABILITY ON THE NISI PRIUS-REJECTED THEORIES OF AGENCY AND NEGLIGENT ENTRUSTMENT

¶ 10 The settled-law-of-the-case doctrine operates to bar *relitigation of issues* that are

11. For the contents of this court's mid-certiorari inquiry see *supra* note 8.

12. On 20 August 2001 the Allens moved to recall mandate in *Allen I*.

13. *Davis v. Baum*, 1941 OK 400, ¶ 15, 133 P.2d 889, 892. The issuance of mandate is governed by Rule 1.16, Oklahoma Supreme Court Rules, 12 O.S.Supp.1998, Ch.15 App. 1. Its terms provide in pertinent part:

> In every appeal or petition to review any order of a district court or other tribunal, a mandate will be issued to the lower court or tribunal on order of the Chief Justice upon conclusion of the matter on appeal. The mandate may be issued seven (7) days after the filing of an order denying certiorari or rehearing in the Supreme Court or expiration of time to file a petition for writ of certiorari or petition for rehearing, and disposition of any timely filed post-decisional motion. . . .

14. *Henderson v. Pebworth*, 1924 OK 772, 107 Okla. 238, 232 P. 74, 75; *McKee v. Thornton*, 1921 OK 166, 198 P. 303; *St. Paul Fire & Marine*

*Ins. Co. v. Peck*, 1914 OK 71, 139 P. 117, 120. An appellate court's "*recall*" of mandate is distinguishable from its "*withdrawal*." This court can always *withdraw* that which does not affect another judicial institution. Because a mandate is directed to a lower tribunal, it is placed beyond this court's withdrawal reach once it is entered upon the district court's record. It has to be *recalled*.

15. *Thompson v. Nickle*, 1925 OK 337, 113 Okla. 44, 239 P. 649, 650–51. There, mandate was recalled because pending in this court on the date of its issuance was the plaintiff's application to modify the court's corrected opinion.

16. Under the analysis I propose today the two mandates—that issued in *Allen I* and that to be transmitted in *Allen II*—will be consistent.

17. A premandate motion to defer mandate's issuance as a means of preventing the settled-law-of-the-case doctrine from affecting the case *before* all the companion appeals have been decided would, in my view, present a persuasively reasoned cause for relief.

finally decided by an appellate opinion as well as of those the aggrieved party failed to raise by its appeal.[18] *Any challenge on an issue tendered for corrective relief but left unresolved by the appellate court is deemed to have survived appellate scrutiny and to have ripened into settled law.*[19] The unassailed part of the nisi prius judgment is always to be considered finally settled.[20]

¶ 11 The Allens' claim against Lynn Hickey tendered three theories of liability—agency, negligent entrustment and negligent sale.[21] After the trial court summarily ruled that Lynn Hickey was the owner of the vehicle at the time of the accident, Lynn Hickey moved for summary relief by *targeting for elimination only* the first two theories. The trial court's prejudgment order summarily sustained Lynn Hickey's quest. According to COCA's opinion in *Allen I,* although the trial court *found* "there was no negligent entrustment or agency," it *failed to make* any "disposition on the law or facts relating to the alternative theory of negligent sale to an incompetent driver." Viewing its *Allen II* pronouncement on the ownership issue as interconnected with *Allen I's* disposition, COCA remanded the cause in the former appeal's opinion "for proceedings ... on the ... [theory] of negligent sale of a vehicle."

¶ 12 Because COCA failed to address itself to a review of the summary ruling on the theories of agency and negligent entrustment, and none of the parties sought certiorari (for review of that ruling), the nisi prius disposition of those theories must stand today as undisturbed by the appellate court's pronouncement. The only theory left open by COCA's *Allen I* opinion is whether Lynn Hickey was *in fact negligent in selling the vehicle.* In contrast to this, the ownership question is explicitly an issue in *Allen II but stands untendered in Allen I.* This is so because the appealing parties in the latter appeal (the Allens) did not challenge the nisi prius ruling on that point. The ownership question was simply untendered since the Allens, who were victorious (on that issue) at nisi prius, did not wish to disturb a favorable ruling by their own appeal.

¶ 13 Because Lynn Hickey's alleged liability (on the theories of agency and negligent

**18.** *Morrow Development Corp. v. American Bank and Trust Co.,* 1994 OK 26, ¶ 2, 875 P.2d 411, 413; *Panama Processes v. Cities Service Co.,* 1990 OK 66, ¶ 11, 796 P.2d 276, 283 n. 27; *Mobbs v. City of Lehigh,* 1982 OK 149, ¶ 6, 655 P.2d 547, 549 n. 5.

**19.** Whenever an appellate court affords no corrective relief from a decision on review (whether in course of remedial inaction by the appellate tribunal or because of the appeal's dismissal), the nisi prius decision is left undisturbed and hence stands affirmed. *Matter of Estate of Burkhart v. Wabaunsee,* 1979 OK 56, ¶ 6, 594 P.2d 361, 363 (dismissal of an appeal can be said to have the same effect as a judgment's affirmance; this is so because on dismissal a judgment becomes at once fully enforceable). Where on the judgment's reversal a cause is remanded, it returns to the trial court as if it had never been decided, save only for the settled law of the case. *Russell v. Bd. of County Comm'rs,* 1997 OK 80, ¶ 35, 952 P.2d 492, 504–05.

**20.** *Handy v. City of Lawton,* 1992 OK 111, ¶ 13, 835 P.2d 870, 873; *Jones v. Medlock,* 1948 OK 188, ¶ 7, 202 P.2d 212, 214.

**21.** Only a *single cause of action* can be predicated on the same set of facts. *Hadnot v. Shaw,* 1992 OK 21, ¶ 24, 826 P.2d 978, 987; *Eason Oil Co. v. Howard Engineering,* 1988 OK 57, ¶ 4, 755 P.2d 669, 672 n. 13; *Chandler v. Denton,* 1987 OK 38, ¶ 13, 741 P.2d 855, 863 n. 20; *Reams v. Tulsa Cable Television, Inc.,* 1979 OK 171, ¶¶ 3–7, 604 P.2d 373, 374–76; *Retherford v. Halliburton Co.,* 1977 OK 178, ¶¶ 6–16, 572 P.2d 966, 968–70. *Different theories of liability may be pressed in support of each claim alleged. See in this connection Silver v. Slusher,* 1988 OK 53, ¶ 7, 770 P.2d 878, 882 n. 11.

All issues that address the *elements* of a "cause of action" and of the available defenses (against it) constitute the *merits of the case. Issues of fact or law on the merits* are typically raised by the pleadings. 12 O.S.1991 § 552. What is on or *dehors* the merits depends on whether the issue at hand affects one or more elements of the claim for relief or any elements of the defense that stands interposed against the claim. Practice, procedure and evidence are not embraced within the term "merits," but are deemed matters "dehors the merits." *Pryse Monument Co. v. District Court of Kay County,* 1979 OK 71, ¶ 3, 595 P.2d 435, 437–38. Trial is a judicial determination of issues on the merits. 12 O.S.1991 § 551. If a case tenders a fact issue on the merits of the controversy, it is unfit for disposition by summary process. 12 O.S.1991 § 557. That issue must be resolved by submission to the trier. *Roark v. Shelter Mut. Ins. Co.,* 1986 OK 82, ¶ 2, 731 P.2d 389, 390 n. 2 (Opala, J., concurring); *Flick v. Crouch,* 1967 OK 131, ¶¶ 13–16, 434 P.2d 256, 261.

entrustment), though *tendered for review, was left undisturbed by COCA's Allen I pronouncement,* the trial judge's original ruling (upon those theories) in favor of Lynn Hickey must now be confirmed as settled law. A timely-pressed relief by certiorari was the Allens' only avenue to avoid the settled-law-of-the-case bar. The sole remaining liability theory that survives for relitigation on today's remand is hence that of Lynn Hickey's allegedly negligent sale.

## IV

## PROBLEMS PLAGUING THESE APPEALS WERE PRECIPITATED BY A FLAWED LEGAL ANALYSIS AND MISREADING OF APPLICABLE RULES

¶ 14 The nisi prius prejudgment rulings, which utilized summary process to dispose of the ownership, agency and negligent entrustment theories, merged into the trial court's *later real* and *only* judgment in the case (that which was entered 14 August 2000).[22] The appeals in *Allen I* and *Allen II were timely brought from that judgment by the accelerated-track method.*[23] When a claim's *partial summary disposition—which is unappealable*[24]—later develops (after a bench trial upon the remaining issues) into a judgment, as it did in this case, Supreme Court Rule 1.36 would not bar the appeal's prosecution *either by the record or upon the accelerated-track method.*[25]

¶ 15 Lynn Hickey brought its separate appeal (for review of the ownership issue) in reliance on Rules 1.27(a)[26] and 1.36(k).[27] These rules appear to require that accelerated-docket appeals *be commenced and prose-*

**22.** *See in this connection Tinker Inv. & Mortgage Corp. v. City of Midwest City,* 1994 OK 41, ¶ 7, 873 P.2d 1029, 1035, n. 19; *Johnson v. Johnson,* 1983 OK 117, ¶ 8, 674 P.2d 539, 544 n. 7.

**23.** See Part I (Anatomy of Litigation), *supra* notes 4 and 5.

**24.** "Partial judgments," whether by summary or trial process, are not appealable. 12 O.S.1991 § 681; *Liberty Bank and Trust Co. v. Rogalin,* 1996 OK 10, ¶¶ 8–10, 912 P.2d 836, 838; *Federal Deposit Ins. Corp. v. Tidwell,* 1991 OK 119, ¶ 8, 820 P.2d 1338, 1341; *Reams, supra* note 21, at ¶¶ 5–10, at 375–77; *King v. Finnell,* 1979 OK 155, ¶¶ 11–13, 603 P.2d 754, 756.

**25.** The pertinent terms of Rule 1.36, Oklahoma Supreme Court Rules, 12 O.S.Supp.1997, Ch. 15, App. 1, are:
The Rule 1.36 accelerated procedure will govern appeals from:
1. summary judgments in cases in which the motions were filed under District Court Rule 13 after October 1, 1993; and
2. final orders in cases in which motions to dismiss for failure to state a claim or lack of jurisdiction (of a person or subject matter) under District Court Rule 4 were filed after October 1, 1993.
* * *
(k) Appeals From Same Trial Court Case.
An appeal governed by Rule 1.36 is prosecuted separately from another appeal from the same trial court case when the appeals challenge different appealable decisions. *An appeal subject to Rule 1.36 must be filed separately* and accompanied by payment of costs in all cases except when it is a cross, counter, or co-appeal to an appeal governed by this Rule, or when filed as an amended petition in error as autho-

rized by Rule 1.36(*l*). The petition in error for a cross, counter, or co-appeal shall have the accompanying record as required for a petition in error by this Rule.
The party filing a subsequent appeal shall clearly notify the court that prior or related appeals have been brought pursuant to Rule 1.36. An appeal governed by this rule *may be considered for consolidation or as a companion* appeal pursuant to Rule 1.27 when appropriate.
(emphasis supplied).

**26.** The pertinent terms of Rule 1.27(a), Oklahoma Supreme Court Rules, 12 O.S.Supp.1997, Ch. 15, App. 1, are:
(a) Cross–Appeal or Counter–Appeal.
If a petition in error has been timely filed to commence an appeal from an appealable decision, then a party aggrieved by the same decision may file a petition in error within forty (40) days of the date the judgment was filed with the district court clerk. Petitions in error which commence an appeal from the same appealable decision or from different appealable decisions in the same case shall so far as possible be filed under the same docket number, *except when one of the appeals is brought pursuant to Rule 1.36.* If more than one petition in error addressed to the same decision is filed the same day, the court shall determine which of these petitions in error is to be regarded as bringing the principal appeal and which constitutes a counter-appeal, a cross-appeal or some other form of appeal.
(emphasis added).

**27.** For the terms of Rule 1.36(k), see *supra* note 25.

cuted as a separate cause. *Lynn Hickey's counsel apparently regarded the client's appellate remedy as affording no choice other than proceeding by the accelerated-track method. Because Lynn Hickey's appeal tendered here for corrective relief the very same judgment as that earlier advanced by the Allens, a counterappeal was its proper designation. It could have been launched by regular record as well by the accelerated-track method.*

¶ 16 A single judgment, which affords an appellant *the right to seek but one corrective relief,* cannot generally be split into multiple proceedings for appellate review.[28] Because the Allens were first to file an appeal from the August 14 judgment and Lynn Hickey had notice of that appeal, Lynn Hickey should not only have cast itself in *Allen II* as counterappellant *but should also* have sought the two appeals' consolidation. *Nay, Lynn Hickey's petition in error explicitly indicates that its cause was brought as a counterappeal.*[29]

¶ 17 The procedural problem tendered here stems from a misreading of this court's rules that govern *appeals from summary dispositions.*[30] The latter are indeed to be placed on the court's *separate* accelerated docket. *Multiple appeals from the same judgment must nonetheless be considered as one appellate cause.*[31] In short, when read together, the *rules require* that separate appeals for corrective relief from the same judgment be disposed of by a single opinion. This case tellingly demonstrates a need for strictly adhering to this view.

¶ 18 Largely because of the parties' failure aggressively to press for consolidation, their two appeals were erroneously allowed to continue here as independent causes. Their survival in that posture has created a true procedural conundrum. Inasmuch as the parties' petitions in error did bring to our attention that (a) two separate appeals from the same decision were timely lodged upon the accelerated track and (b) the second cause to be filed was designated as a counterappeal, either this court, acting *sua sponte* (before assignment of the case to COCA) or the COCA, also acting *sua sponte*, should have consolidated the two proceedings for disposition by a single pronouncement.

V

SUMMARY

¶ 19 The nisi prius resolution of the agency and of the negligent entrustment theories in favor of Lynn Hickey must now be accepted as *Allen I's settled law.* The sole liability theory that survives for relitigation (on remand) is that of Lynn Hickey's alleged negligent sale. Lynn Hickey's ownership of the car in question may also be tried on today's remand as a fact issue.

¶ 20 The parties' failure aggressively to press for consolidation was doubtless occasioned by their misreading of the rules that govern appeals by the accelerated track when they are construed together with those that regulate multiple appeals from the same judgment. All these rules should be read together and construed to *require* consolidation of *all separate appeals for review of the same judgment, whether that judgment was summarily decided, in whole or in part, or the entire case was resolved by trial.* All

---

**28.** Oklahoma law recognizes that in every action there is but *one judgment* from which an aggrieved party may prosecute only one appeal. *Wells v. Shriver,* 1921 OK 122, 197 P. 460, 478.

**29.** Lynn Hickey's *Allen II* petition in error (filed 7 September 2000), at page 3, states in pertinent part:

VII. SUMMARY OF CASE ON **COUNTER-APPEAL**—EXHIBIT "B"
  See Exhibit A.
VIII. ISSUES TO BE RAISED ON **COUNTER-APPEAL**—EXHIBIT "C"
  See Exhibit C.
(emphasis added).

A *counterappeal*—much like a counter-demand or a counterclaim at nisi prius—is that which is brought by an appellee who invokes the reviewing court's cognizance for relief from appellant's trial-court victory on one or more issues tendered for resolution below. In contrast to a counterappeal, a *cross-appeal* is one brought by an appellee who seeks relief from a nisi prius ruling for another appellee. *Spears v. Preble,* 1983 OK 8, ¶ 4, 661 P.2d 1337, 1344 (Opala, J., concurring in result).

**30.** Rule 1.36, *supra* note 25.

**31.** Rule 1.27(a), *supra* note 26.

appeals from the same judgment may be disposed of by a single opinion. On consolidation the parties should always be recast as appellant and counterappellant (or cross-appellant).

SUMMERS, J., dissenting.

¶1 I would affirm the judgment of the District Court.